IN RE the INTEREST OF D.S.P., a juvenile: I.P.,
Appellant,†

R.A.C.P., Co-Appellant,†

v.

STATE of Wisconsin, Respondent.

Court of Appeals

*No. 89–1362. Submitted on briefs April 26, 1990.—Decided
June 19, 1990.*

(Also reported in 458 N.W.2d 823.)

†Petitions to review granted.

On behalf of appellant, the cause was submitted on the briefs of *Michael J. Palid* of Marinette.

On behalf of co-appellant, the cause was submitted on the briefs of *Frank J. Crisafi* of *Heibl, Heibl & Crisafi* of Madison.

On behalf of respondent, the cause was submitted on the brief of *Jane Krueger Smith,* assistant district attorney, of Marinette.

On behalf of D.S.P., the cause was submitted on the guardian ad litem brief of *Kim A. Coggins* of Marinette.

Before Cane, P.J., LaRocque and Myse, JJ.

LaROCQUE, J. The parents of D.S.P., an enrolled member of the Sault Ste. Marie Tribe of Chippewa Indians, appeal the termination of their parental rights on grounds of abandonment.[1] The child's mother, R.A.C.P. (R.P.), challenges an alleged failure to abide by the statu-

---

[1]Upon the chief judge's order, this has been issued as a three-judge opinion pursuant to sec. 809.41(3), Stats.

tory time restrictions governing TPR hearings; refusal in midtrial to appoint a guardian ad litem for her; presentation of evidence to the jury concerning the best interests of the child; rejection of the Indian Child Welfare Act's (ICWA) beyond-a-reasonable-doubt burden of proof for each of the fact-finding issues presented to the jury; and the court's failure to make a finding of unfitness independent of the jury verdict. The child's father, I.P., challenges the court's refusal to sever his case for trial and the alleged failure to reduce a consent decree to writing and serve it upon him. Both parents challenge the qualifications of social workers as expert witnesses on the issue of potential future harm to the child. We affirm.

## TIME RESTRICTIONS OF THE CHILDREN'S CODE

R.P. argues a violation of sec. 48.422(2), Stats., that directs the court to set a date for a fact-finding hearing within forty-five days of the plea hearing. Section 48.315(1)(b), Stats., excludes any period of delay resulting from a continuance granted at the request of or with the consent of the child and counsel. Section 48.315(2) provides:

> A continuance shall be granted by the court only upon a showing of good cause in open court . . . on the record and only for so long as is necessary, taking into account the request or consent of the district attorney or the parties and the interest of the public in the prompt disposition of cases.

The plea hearing occurred on July 1, 1987, and the jury trial started fifteen months later on October 3, 1988. R.P. concedes that many of the delays were attributable to her, including instances when she failed to appear, sought discovery, was in alcohol treatment and took an

interlocutory appeal. She argues, however, that the forty-five-day time restriction commenced to run on September 28, 1987. It was on this date, with a jury called and waiting to hear the case, that the parties entered into a negotiated stipulation pursuant to which D.S.P. was placed in a foster home with arrangements for parental visits on a scheduled basis. The oral agreement included a waiver of any timeliness requirements as to trial for a year.

R.P. cites *In re R.H.,* 147 Wis. 2d 22, 30 n.7, 433 N.W.2d 16, 23 n.7 (Ct. App. 1988), for the proposition that ch. 48, Stats., time limits cannot be waived. In that case, however, the state contended that the child, *by her silence,* consented to the scheduling of a dispositional hearing beyond the statutory limit after her no contest plea in a delinquency proceeding. *Id.* at 38, 433 N.W.2d at 23. The trial record in *R.H.* was also silent as to the reason for the delay except for the judge's remark: "The parties can contact my secretary to get the date and time of that hearing that is mutually convenient to all parties." *Id.* at 42, 433 N.W.2d at 24 (Dykman, J., dissenting). This court held that the record failed to disclose a continuance for good cause. *Id.* at 39, 433 N.W.2d at 23. *R.H.* is easily distinguished. That decision was subsequently affirmed by the Wisconsin Supreme Court when the six participating justices split three to three whether to affirm or reverse. *In re R.H.,* 150 Wis. 2d 432, 441 N.W.2d 233 (1989).

The record here contains ample evidence to support a finding of good cause. A judicial incantation of statutory phrases was unnecessary. This court will affirm decisions of the trial court if that court reached a result that the evidence would sustain had a specific finding supporting that result been made. *Moonen v. Moonen,*

39 Wis. 2d 640, 646, 159 N.W.2d 720, 723 (1968). The trial court here explicitly stated that the visitation arrangement was preferable to a jury trial and a potential disposition contrary to the parents' wishes. R.P. was present at the hearing and represented by two lawyers, each of whom approved the continuance. The agreement was also approved by the tribal representatives, the district attorney, the child's guardian ad litem, the foster mother, the Marinette County Department of Social Services, and explicitly by the parents themselves. Detailed measures were invoked to assure the parents continuous access to lawyers, social workers and periodic review by the court. The court obeyed the dictates of sec. 48.315, Stats. R.P.'s claim to the contrary is disingenuous.

## REFUSAL TO APPOINT A GUARDIAN AD LITEM

■ R.P. portrays the court's refusal to appoint a GAL for her as an abuse of discretion. R.P.'s trial counsel, on the fourth day of the jury trial and again the following day, moved for appointment of a GAL. The court, faced with a dilemma, denied the motion citing the difficulty of interrupting an ongoing jury trial and the likelihood that appointment of a GAL, once made known to the jury, may not "enhance her chances of winning." While even the serious inconvenience of interrupting a jury trial or the potential adverse impact on a parent's defense are improper standards by which to resolve a competency issue, the trial court's failure to directly resolve whether R.P. was competent was harmless error. An error is harmless when there is no reasonable possibility that the error contributed to the termination of R.P.'s parental rights. *See State v. Dyess,* 124 Wis. 2d 525, 543, 370 N.W.2d 222, 231-32 (1985).

114

The state first argues that, even if R.P. were incompetent, her husband, I.P., had a substantially identical interest in opposing the termination hearing so as to negate the necessity of a guardian ad litem pursuant to the provisions of sec. 879.23(5), Stats., which provides in part: "Virtual representation. The court may dispense with . . . the appointment of a guardian ad litem for an interested person who is . . . incompetent . . . if there is a living person, of full legal rights and capacity, who is a party to the proceeding and has a substantially identical interest in it."[2] We disagree. Parents have independent interests in protecting their individual rights, and the mere fact that neither saw fit to accuse the other of wrongdoing is not the equivalent of a substantially identical interest.

Trial counsel's request for a GAL, made after R.P. absented herself from all but the first day of trial, included conflicting remarks concerning R.P.'s competence, which the trial court failed to resolve. Counsel described R.P. as particularly helpful in addressing voir dire and matters relating to the jury; he said that despite her problems with intellectual function and alcohol, he had visited her each night of the trial and felt she was "able to assist me and was understanding things. . . . Last night I had serious question whether that was so." Although counsel and the court commented upon R.P.'s unexplained absence, her low I.Q. and continuous problems with alcohol, and, despite the enigmatic reference to "last night," the court rejected the request.

Nevertheless, even assuming momentarily that R.P. was in fact incompetent, the failure to appoint a GAL was harmless. Adversary counsel vigorously and competently contested the TPR petition, consistent with

[2]Section 48.235, Stats., provides that a GAL appointed under ch. 48 shall be appointed pursuant to sec. 879.23.

R.P.'s denial of the allegations. This court has recognized that adversary counsel and a GAL may pursue independent and sometimes competing responsibilities in ch. 48, Stats., proceedings. *In re T.L.,* 151 Wis. 2d 725, 736, 445 N.W.2d 729, 734 (Ct. App. 1989). Thus, had the court conducted a hearing, found R.P. incompetent and appointed a GAL, the GAL could have either acquiesced in the decision to contest the matter, in which case his or her presence would have added nothing, or, alternatively, the GAL could have decided it was contrary to R.P.'s best interests to contest the matter, in which case the GAL's position would be adverse to that of R.P. on this appeal. The trial court's inaction thus does not serve as a basis for a new trial because it did not contribute to the TPR decision that she seeks to overturn.

## BEST INTERESTS OF THE CHILD EVIDENCE

R.P. raises for the first time on appeal the issue of the state's presentation to the jury of evidence and argument concerning what was in D.S.P.'s best interests. The "best interests" standard is applicable only at the dispositional stage of a TPR hearing. *In re C.E.W.,* 124 Wis. 2d 47, 61, 368 N.W.2d 47, 54 (1985). This is so because the jury is only a fact-finder for the purpose of deciding whether grounds for termination have been proven, and the trial court in the second stage of the proceeding decides the disposition.

Appellate courts will generally not review an issue raised for the first time on appeal. *Wirth v. Ehly,* 93 Wis. 2d 433, 443–44, 287 N.W.2d 140, 145–46 (1983). Even if this court were to review the unobjected to evidence under the plain error doctrine, *see C.E.W.,* 124 Wis. 2d at 55 n.4, 368 N.W.2d at 51 n.4, her claim appears merit-

less. We have examined each of R.P.'s record references to the testimony in question, and it is apparent that in each instance except one, the witnesses were describing the likelihood of serious emotional or physical damage to the child as required by the ICWA. The remaining brief reference to D.S.P.'s best interests was insignificant in context of all of the other evidence in a lengthy trial and rendered harmless in view of admonitory jury instructions. "Possible prejudice is presumptively erased from the jury's collective mind when instructions are properly given by the court." *In re T.M.S.*, 152 Wis. 2d 345, 362, 448 N.W.2d 282, 289 (Ct. App. 1989). Here, the court carefully instructed the jury that the court alone would determine termination of parental rights based upon the best interests of the child, while the jury was only to determine grounds.

## THE INDIAN CHILD WELFARE ACT

R.P. says that federal law requires proof beyond a reasonable doubt of each factual determination essential to a TPR decision involving Indians. The ICWA of 1978, 25 U.S.C.A. sec. 1901 to 1963 (1983), is "by any standard one of the most sweeping statutes in the field of Indian law." Getches & Wilkinson, *Cases and Materials on Federal Indian Law* 457 (2d ed. 1986). The relevant provisions of the Act involved here reflect Congressional findings that an alarmingly high percentage of Indian families are broken up by an often unwarranted removal of Indian children from their homes by both public and private agencies. 25 U.S.C.A. sec. 1901(4) (1983).

In Wisconsin, the risk run by Indian children of being separated from their parents has been said to be nearly 1,600% greater than for non-Indian children. *Indian Child Welfare Program: Hearings Before the*

*Subcomm. on Indian Affairs,* 93rd Cong., 2d Sess. 15 (1974), *reprinted in* 1978 U.S. Code Cong. & Admin. News 7530, 7531.

■

D.S.P., as an enrolled member of an Indian tribe, comes within the provisions of the ICWA. *See* 25 U.S.C.A. sec. 1903(3) (1983). A termination of parental rights proceeding comes within the Act. 25 U.S.C.A. sec. 1903(1)(ii) (1983). No termination of parental rights may be ordered in a state court in the absence of a determination, supported by evidence beyond a reasonable doubt, including testimony of qualified expert witnesses, that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child. 25 U.S.C.A. sec. 1912(f) (1983). Any party seeking to effect a termination of parental rights to an Indian child under state law shall also satisfy the court that active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that these efforts have proved unsuccessful. 25 U.S.C.A. sec. 1912(d) (1983). Although sec. 1912(d), unlike sec. 1912(f), makes no mention of a burden of proof, other jurisdictions have concluded that Congress intended the beyond-a-reasonable-doubt standard to apply to both subsections. *In re S.R.,* 323 N.W.2d 885, 887 (S.D. 1982).

■

The ICWA supersedes the provisions of the Wisconsin children's code in any custody proceeding governed by the federal act. Sec. 48.028, Stats. Under the Wisconsin children's code, a petition to terminate parental rights requires proof only by clear and convincing evidence. Sec. 48.31(1), Stats. Construction of statutes presents a question of law, and this court owes no defer-

ence to the trial court's determination. *In re F.E.W.,* 143 Wis. 2d 856, 860, 422 N.W.2d 893, 895 (Ct. App. 1988). Federal and state statutes relating to the same subject matter should be construed together and harmonized if possible. *See State v. Burkman,* 96 Wis. 2d 630, 642, 292 N.W.2d 641, 647 (1980).

Federal law preempts state law, of course, where Congress explicitly so declares. *Ray v. Atlantic Richfield Co.,* 435 U.S. 151 (1978). Where the presumption is not explicit, the unique historical origins of tribal sovereignty and federal commitment to tribal self-determination require an additional analysis that weighs the competing interests at stake between the state and the tribe. *New Mexico v. Mescalero Apache Tribe,* 462 U.S. 324, 334 (1983). State jurisdiction is preempted by the operation of federal law if it interferes or is incompatible with federal and tribal interests reflected in federal law unless the state interests at stake are sufficient to justify the assertion of state authority. *Id.*

The burden of proof applicable to a TPR hearing involving an Indian child under the ICWA is a matter of first impression in Wisconsin. We conclude that the trial court appropriately distributed the burden of proof according to the dictates of both the ICWA and the Wisconsin children's code. The trial court required the state to convince a unanimous jury beyond a reasonable doubt: that the government made active efforts to provide remedial services and rehabilitation programs designed to prevent the breakup of the child's birth family; that these efforts were unsuccessful; and that placement with the parents or either of them would likely result in serious emotional or physical damage to the

119

child.[3] The court, however, only required the state to convince ten jurors by clear and convincing evidence that I.P. and R.P. had abandoned the child and were unfit parents. Other jurisdictions have applied a similar dual burden of proof. *In re J.R.B.*, 715 P.2d 1170 (Alas. 1986); *In re S.R.* This court approves the dual burden used here. The Wisconsin children's code, insofar as it requires only proof by clear and convincing evidence of the underlying fact of abandonment and unfitness, neither interferes with nor is incompatible with the ICWA. The goal of the ICWA is not to make abandonment and unfitness harder to prove, but to assure that these findings do not result in a TPR absent strong evidence of unsuccessful remedial intervention and similar proof of a real threat to the child's safety.

## FINDING OF PARENTAL UNFITNESS

R.P. argues that the trial court failed to make an independent determination regarding parental unfitness. This court has held that a jury finding that the requirements of sec. 48.415(2), Stats., exist mandates that the trial court find unfitness as a matter of law. *In re K.D.J.*, 153 Wis. 2d 249, 254, 450 N.W.2d 499, 502 (Ct. App. 1989). In any case, the trial court did make an independent finding when it stated: "I find that each and every one of the findings of the jury is substantiated in the evidence; and I accept those findings, and I adopt them as part of the decision of this court."

---

[3]The ICWA does not explicitly require a unanimous verdict. The trial court obviously included this requirement, consistent with a standard associated with the highest burden of proof. Because the issue is not presented by this appeal, we decline to decide whether a unanimous verdict was necessary.

## REFUSAL TO SEVER R.P.'S TRIAL

I.P. seeks a new trial on grounds that the trial court erred by denying him a separate trial. Although he asserts that most of the evidence at trial related to R.P. rather than to him, no recitations to the record are provided. The reviewing court need not sift the record for facts that support counsel's contention. *Keplin v. Hardware Mut. Cas. Co.,* 24 Wis. 2d 319, 324, 129 N.W.2d 321, 323 (1964). This court will sustain discretionary acts of the trial court if it finds that the court examined the relevant facts, applied an appropriate standard of law, and used a rational process reaching a conclusion that a reasonable judge could reach. *Loy v. Bunderson,* 107 Wis. 2d 400, 414–15, 320 N.W.2d 175, 184 (1982). This court has held that proceedings to terminate parental rights against both the father and the mother may be brought in a single action in the interest of judicial economy and in the absence of prejudice. *T.M.S.,* 152 Wis. 2d at 362, 448 N.W.2d at 289.

The trial court refused to sever I.P.'s trial in the interest of judicial economy and because I.P.'s interests were not unduly prejudiced by the admission of evidence relevant only to R.P. It noted that the parents live together and that much of the evidence of the mother's behavior was therefore relevant to whether the child faced future physical or emotional harm if the father's rights were not terminated. This decision was not an abuse of discretion.

I.P. argues further that because R.P. absented herself from four of the five days of trial, the jury was more likely to hold him responsible for R.P.'s conduct. This is mere speculation. Further, I.P.'s counsel in closing argument reminded the jury to separately consider the evi-

121

dence against each parent. Finally, the verdict included separate inquiries concerning the issues as they related to each parent, thus emphasizing to the jury its duty to examine the issues independently.

## WRITTEN CONSENT DECREE

 I.P. asserts that an amendment to the original consent decree violated sec. 48.32(1), Stats., which requires that a consent decree be reduced to writing and given to the parties. The original decree was entered on the record on the day scheduled for trial, September 27, 1987, wherein the parties stipulated to a one-year adjournment with a structured visitation schedule. I.P. concedes service of the original decree. His challenge is directed to an amendment changing the visitation schedule. The changes were apparently furnished to I.P. in letter form. I.P.'s argument that he was confused by the change is unsupported by reference to the record. The changes in the schedule were an accommodation to the parents, who had moved from Manistique, Michigan, where they formerly resided, to the Marinette, Wisconsin, area where the child resided in a foster home. This change of residence resulted in the opportunity for more visitation and thus the amendment. Finally, the state notes that the case was tried, not on the theory that I.P. failed to comply with the more liberal visitation arrangement, but rather because he failed to exercise the twice monthly visitation originally agreed upon.

## QUALIFICATIONS OF EXPERTS

R.P. maintains that the state failed to comply with the qualified expert witness requirements of federal law. Section 1912(f) requires qualified expert witnesses on

the issue of whether continued custody of the Indian child by the parent is likely to result in serious emotional or physical damage to the child. Section 907.02, Stats., designates a witness an expert by virtue of knowledge, skill, experience, training or education. Some states, when dealing within ICWA issues, also follow the Department of Interior Guidelines, which provide:

> b. Persons with the following characteristics are most likely to meet the requirements for a qualified expert witness for purposes of Indian child custody proceedings.
>
> . . ..
>
> (i) A member of the Indian child's tribe who is recognized by the tribal community as knowledgeable in tribal customs as they pertain to family organization and childrearing practices.
>
> (ii) A lay expert witness having substantial experience in the delivery of child and family services to Indians, and extensive knowledge of prevailing social and cultural standards and childrearing practices within the Indian child's tribe.
>
> (iii) A professional person having substantial education and experience in the area of his or her specialty.

44 Fed. Reg. 67593 (1979); *see In re M.E.M.*, 635 P.2d 1313, 1317–18 (Mont. 1981); *In re Kreft*, 384 N.W.2d 843, 847 (Mich. App. Ct. 1986).

Insofar as the social workers' testimony is challenged here, the Michigan court in *Kreft* concluded that Frances Lee Kokko, the witness used by the state of Wisconsin in this trial, was qualified. Kokko is a full-blooded Chippewa and a member of the Sault Ste. Marie band, was raised on reservations, raised three Indian children, is familiar with the tribal customs, heritage and

traditions, and had been employed by that band as a social worker and social work supervisor for twelve years. She has an associate degree in child development from Lake Superior State College, a bachelor of science degree from that school, and a master's degree in social work from Michigan State University. Kokko meets the standards of sec. 907.02, Stats., as well as the Department of Interior guidelines.

Another expert witness, Marty Snyder, is similarly qualified. She served, in fact, on the committee that helped establish the ICWA. She is a mental health social worker for the Sault Ste. Marie Tribe, has a bachelor's degree from Northern Michigan University and is certified as a social worker by the state of Michigan. She has raised eight children of her own in the tribal tradition and cared for a number of foster children in her home. She has been employed by the tribe since 1974, has been involved with them in their housing authority, health committee, education and enrollment committees and chaired one of the first Indian child placement agencies in the United States. She operates through a nine-member child welfare committee and a team of social workers to arrive at a tribal recommendation. She has been involved with the parents and child in question since 1986. The parents' challenge to the underlying qualifications of the expert witnesses is without merit.

I.P. raises another basis to disqualify the two experts. Section 48.31(4), Stats., governing proof in CHIPS cases requires that "the court shall not find that the child is suffering serious emotional damage unless a licensed physician specializing in psychiatry or a licensed psychologist . . . has testified . . . that in his or her opinion the condition exists . . .." This statute is no impediment to the expert testimony here. First, sec. 48.31(4) is limited to a CHIPS hearing. Second, the chil-

dren's code requirement relates to allegations that a child *is* suffering emotional damage and not to the question whether future damage is likely to occur. The latter inquiry necessitated by the ICWA is better answered by those skilled in social science than by a medical prognosis, and therefore permits the testimony of a qualified social worker.

*By the Court.*—Order affirmed.