### In re DENICE F., et al.

Supreme Judicial Court of Maine.

Submitted on Briefs March 3, 1995.

Decided May 24, 1995.

Richard C. Cleary, Patrick E. Hunt, P.A., Island Falls, for mother.

Allan Hanson, Caribou, for father.

James D. Carr, Houlton, Guardian Ad Litem.

Nancy Torresen, Asst. Atty. Gen., Bangor, for D.H.S.

Margaret T. Johnson, Presque Isle, for Houlton Band of Maliseet Indians.

Before WATHEN, C.J., and ROBERTS, CLIFFORD, RUDMAN, DANA and LIPEZ, JJ.

LIPEZ, Justice.

The mother of A and B appeals from a judgment of the District Court (Griffiths, J.) terminating her parental rights. She contends that the Department of Human Services [hereinafter "DHS"] did not establish

beyond a reasonable doubt, as required by the Indian Child Welfare Act, 25 U.S.C. §§ 1901–1963 (1983) [hereinafter "ICWA" or "Act"], that A and B are likely to suffer emotional or physical damage should they remain in her custody. She further asserts that DHS did not establish by clear and convincing evidence, as required by state law, that she is currently unwilling or unable to take responsibility for A and B or to protect them from jeopardy, nor will she be able to do so within a time reasonably calculated to meet their needs, and that termination is in the best interests of the children. Because we find that the evidence produced at trial met the required burdens of proof, we affirm the judgment of termination.

### Background

The mother, a member of a recognized band of Indians located in Maine [hereinafter "Band"], grew up in foster care. She married in 1979 and thereafter gave birth to A and B. Both children are also members of the Band.

The mother, who is mildly mentally retarded, has been the subject of DHS scrutiny for over 10 years. The primary issues have been unsanitary living conditions, neglect of her children, inability to protect them from sexual abuse, mental illness and substance abuse. Support services from both DHS and the Band have been provided to her.

In 1988, DHS petitioned for and was granted custody of A and B. Reunification was unsuccessfully attempted. The court issued a cease reunification order in 1990. The department subsequently filed a petition for termination of parental rights to A and B, which the District Court approved.

### The Indian Child Welfare Act

■ The ICWA, which both parties concede applies to the instant case,

> was the product of rising concern in the mid–1970's over the consequences to Indian children, Indian families, and Indian tribes of abusive child welfare practices that resulted in the separation of large numbers of Indian children from their families and tribes through adoption or foster

care placement, usually in non-Indian homes.

*Mississippi Band of Choctaw Indians v. Holyfield,* 490 U.S. 30, 36, 109 S.Ct. 1597, 1601–02, 104 L.Ed.2d 29 (1989). The ICWA seeks to protect the rights of Indian children and of the Indian community by establishing a federal policy that, where possible, an Indian child should remain in the Indian community, and that welfare determinations should not be based on white middle-class standards which often foreclose placement of an Indian child with an Indian family. *Id.* at 39, 109 S.Ct. at 1603. In pursuit of this policy, the ICWA provides that termination of parental rights may not be ordered in the absence of "a determination, supported by evidence beyond a reasonable doubt, ... that continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child." 25 U.S.C. § 1912(f).

■ We reject the mother's assertion that, on the basis of preemption, the "beyond a reasonable doubt" standard of the ICWA also applies to the state grounds for termination of parental rights. The state grounds for termination of parental rights, unaffected by the ICWA, provide a supplemental degree of protection to parents facing a petition for termination of parental rights. Such grounds for termination should be reviewed for clear and convincing evidence. A dual burden of proof—one federal, one state— thus exists in cases involving the termination of parental rights to an Indian child. *See In re Matter of Bluebird,* 105 N.C.App. 42, 411 S.E.2d 820, 823 (1992) (provisions of the ICWA requiring proof beyond a reasonable doubt do not require state statutory grounds be proved to such a high standard); *In re Annette P.,* 589 A.2d 924, 926 (Me.1991) (clear and convincing evidence standard applied to state grounds for termination of parental rights); *In re D.S.P.,* 157 Wis.2d 106, 458 N.W.2d 823, 829 (1990), *aff'd,* 166 Wis.2d 464, 480 N.W.2d 234 (1992) (children's code, requiring proof by clear and convincing evidence of unfitness of a parent, neither interferes with nor is incompatible with the ICWA; dual burden of proof requires evidence beyond a reasonable doubt regarding placement with parents causing serious risk

of harm, but only clear and convincing evidence regarding abandonment of child and neglect); *In re Dependency of Roberts*, 46 Wash.App. 748, 732 P.2d 528, 531 (1987) (holding ICWA merely imposes additional burden on State); *In re J.R.B.*, 715 P.2d 1170, 1172 (Alaska 1986) (holding enactment of ICWA did not expressly or implicitly preempt state law).

### *Termination of Parental Rights*

#### *The ICWA*

■■ In order to terminate parental rights under the ICWA, the District Court must find by evidence beyond a reasonable doubt that continued custody of A and B by the mother is likely to result in serious emotional or physical damage to the children. 25 U.S.C. § 1912(f). There is ample evidence to support such a finding.

At trial, a witness qualified as an expert pursuant to the ICWA by virtue of his experience in providing services to Native American families and previous service to the court as an expert under the Act,[1] testified that continued custody of A and B in foster care or with their mother was likely to result in serious emotional or physical damage to them. Other witnesses testified to the mother's past and future inability to care for the children. There was consistent evidence of the unsanitary conditions in the mother's home. Medical neglect and lack of supervision were reported. Several incidents raised concerns about the mother's ability to protect her children from sexual abuse. Long-term assistance from service providers did not enhance the mother's ability to care for the children, despite the fact that she appears to

genuinely care for them. The court did not err in concluding that the department sustained its burden beyond a reasonable doubt that if A and B returned to the mother's home, they were likely to experience serious emotional or physical damage.

#### *The State Grounds for Termination*

■■ Under the state grounds for termination, the court must find that the parent is inadequate under one of the statutory conditions outlined in 22 M.R.S.A. § 4055 and that termination is in the best interests of the children. We will affirm an order for termination if the court could reasonably have been persuaded that the required factual findings were proven to be highly probable. *In re Annette P.*, 589 A.2d at 926.

The mother challenges the court's findings pursuant to 22 M.R.S.A. § 4055(1)(B)(2)(b) that she is unable or unwilling within a time reasonably calculated to meet her children's needs to take responsibility for them and to protect them from jeopardy. The court heard extensive testimony on these issues. The record shows that she has been unable to provide adequate clothing, shelter, supervision and care for her children. Her ability to protect them from sexual abuse is questionable. As the mother is unlikely to remedy her deficits in a time reasonably calculated to meet her children's needs, the court did not commit clear error in finding that she is unwilling or unable to take responsibility for A and B and to protect them from jeopardy.[2]

The record also discloses that A and B have spent the last six years of their lives in foster care. While in their mother's care, they lived in unsanitary conditions and suf-

---

1. The ICWA requires the testimony of a qualified expert witness in any involuntary proceeding to terminate parental rights. 25 U.S.C. § 1912(f). A qualified expert witness is generally:

    (i) A member of the Indian child's tribe who is recognized by the tribal community as knowledgeable in tribal customs as they pertain to family organization and childrearing practices. (ii) A lay expert witness having substantial experience in the delivery of child and family services to Indians, and extensive knowledge of prevailing social and cultural standards and childrearing practices within the Indian child's tribe.

    (iii) A professional person having substantial education and experience in the area of his or her specialty.
    Guidelines for State Courts; Indian Child Custody Proceedings, 44 Fed.Reg. 67,593 (1979).

2. We need not address the mother's contention that the court erred in finding that she did not make a good faith effort to rehabilitate and reunify with A and B because the State has already presented sufficient evidence to establish two of the required elements to terminate parental rights under 22 M.R.S.A. § 4055(1)(B)(2), though only one need be established for this Court to affirm a termination order.

fered from instability relating to her repeated hospitalizations for mental illness. B has shown improvement in his school performance since being removed from his mother's custody. A has bonded to her foster mother. Nevertheless, A and B are both anxious and frustrated at the lack of permanence they must endure.

A and B will require careful parenting due to their emotional needs. B suffers from an adjustment disorder which leaves him with a limited ability to handle stress. A has either a language-based learning disability or attention deficit disorder. She may also suffer from fetal alcohol effects. She is definitely at risk for academic difficulties and requires structure, consistency and patience from any parent.

The testimony at trial indicates that the mother will not be able to cope with the demands of her children even with the myriad of services which have been made available to her in the past. The court's finding that termination of her parental rights is in the best interests of her children was supported by clear and convincing evidence.

The entry is:

Judgment affirmed.

All concurring.