2000 ME 122

**In re MORRIS D.**

Supreme Judicial Court of Maine.

Submitted on Briefs April 14, 2000.
Decided June 29, 2000.

Joseph M. Baldacci, Esq., Bangor, for appellant.

Ellen S. Best, Esq., Blue Hill, for Guardian ad Litem.

Andrew Ketterer, Attorney General, Christopher D. Leighton, Asst. Atty. Gen., John H. Hawkes, Asst. Attorney General, Matthew Pollack, Asst. Attorney General, Augusta, for appellee.

Panel: WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

WATHEN, C.J.

[¶ 1] The mother of Morris D. appeals from the judgment entered in the District Court (Ellsworth, *Staples, J.*) terminating her parental rights in her son. On appeal, the mother argues that the court erred when it denied her pre-trial request to require Morris to testify at the termination hearing, that the court impermissibly admitted a report prepared by her psychiatrist over her objection that it was privileged, and that the evidence was insufficient to support the court's findings. We disagree and affirm.

[¶ 2] The present case is at least the second round of DHS involvement in the care and custody of Morris. The first round began in 1991 and resulted in the termination of Morris's father's parental rights. DHS, which had custody of Morris, also sought to terminate the mother's parental rights at that time on the ground that the mother, who has been diagnosed with bi-polar disorder, was unable to care for Morris. The mother had persistent problems with substance abuse; while under the influence of alcohol, the medication to control her disease loses much of its effectiveness and she becomes prone to violent, unpredictable mood swings. The mother also had a history of entering relationships with abusive, alcoholic men and of failing to adequately protect Morris from these men. Nonetheless, in March of 1996, the court refused to terminate her rights. DHS was ordered to continue services and reunification attempts with the mother, while she was ordered to "maintain sobriety, control of her Bi-polar disease and avoidance of relationships with abusive men" as well as to continue counselling. The court indicated that if she complied with these requirements for a year, Morris would return to her custody. In May of 1997, the child protection petition was dismissed, and Morris returned to his mother.

[¶ 3] Morris, however, did not stay in his mother's care for long. In October, DHS heard that she was again with her abusive and alcoholic boyfriend, that she had threatened to kill both Morris and Morris's dog, and that she was again drinking on a daily basis. DHS filed a new child protection petition, thus commencing the present action. Though she was initially allowed to visit Morris, that privilege was revoked in April of the next year when DHS learned that she had sexually abused Morris. Four months later, a jeopardy order was entered, and DHS filed a new petition to terminate her parental rights.

[¶ 4] Prior to the hearing on the termination petition, the mother requested that the court allow her to list Morris as a witness. Both the guardian ad litem and the State objected, and the court denied the motion. She also requested partial

state funding for an additional psychiatric evaluation. The court agreed and Dr. Rassmussen performed the evaluation of her, eventually preparing a written report of his conclusions. After the mother decided not to offer his testimony or report at the termination hearing, the State offered the report as part of its case. The mother objected, arguing that the report was subject to the patient-psychotherapist privilege. The court overruled her objection.

[¶ 5] At the hearing, the evidence indicated that Morris had been repeatedly abused sexually, emotionally, and physically by his mother. Much of this abuse was the result of her inability to control either her illness or her substance abuse. She has repeatedly demonstrated her inability to comply with the treatment prescribed for her bi-polar disorder. She has also been unable to control her drinking despite repeated court orders that she do so, and, though she is currently engaged in treatment programs for substance abuse, at least one expert opined that her history was "likely to repeat itself with periods of sobriety and adequate functioning followed by periods of substance abuse in which she is likely to exhibit a wide range of manic symptoms .... " There was also abundant evidence that while Morris and his mother shared a bond, that bond was traumatic to Morris and continued visits or reunifica-

tion would be detrimental. Furthermore, and contrary to his mother's assertions, Morris indicated that "he was happy in his current home, ... that he was looking forward to the possibility of being adopted," and that he did not think it was a good idea to return to his mother's care. Based upon these facts, the court found by clear and convincing evidence that she was unable or unwilling to protect Morris from jeopardy, that she had failed to make a good faith effort to reunify with Morris, and that termination was in Morris's best interests. The court therefore entered an order terminating her parental rights. The mother appeals from that judgment.

■ [¶ 6] The mother first challenges the denial of her motion to require Morris to testify. We review the refusal to require the testimony of a child for abuse of discretion, *see In re Shane T.*, 544 A.2d 1295, 1297 (Me.1988), and will evaluate the court's decision to determine if it has fairly balanced the interest of the State in protecting the child with the interest of the parents in maintaining custody. *See In re Priscilla S.*, 1997 ME 16, ¶ 3, 689 A.2d 593, 594–95. Even if it were possible to credit the mother's assertions about the substance of Morris's testimony,[1] and even if it were possible to conclude that the State's interest in protecting Morris would not be implicated by requiring him to testify,[2] the mother has failed to show that she

---

1. Although the mother last had significant contact with Morris in April of 1998, she nonetheless claims he would have testified to a desire to return to her care permanently. Because the mother's assertions about how Morris would testify were based upon her own knowledge, the court would have been justified in concluding that she lacked a reasonable basis for her claims.

   We also note that the mother does not argue that Morris's statements were being unfaithfully reported to the court. Instead, she argues only that were he forced to appear, Morris would testify to a different desire for his permanent placement than that which he had expressed to his service providers. Even if she had alleged falsity on the part of the witnesses relaying Morris's statements, the correct procedure to address that issue would

be to request that the court "interview [the] child witness in chambers, with only the guardian ad litem and counsel present," as provided by Section 4007(2) rather than attempting to put the child on the stand in open court. 22 M.R.S.A. § 4007(2) (1992).

2. The evidence indicated that Morris had a traumatic bond with his mother and that he did not wish to hurt her but instead wished for her to get well. Nonetheless, Morris had repeatedly expressed his desire not to return to her care. The court could reasonably conclude that requiring Morris to affirm this desire in his mother's presence would cause him substantial additional trauma. Because we conclude that the mother has failed to demonstrate she was prejudiced, we do not need to address the level of prejudice that would be

was prejudiced at all by Morris's absence from the courtroom.

 [¶ 7] The mother's principal claim of prejudice is based on her assertion that Morris's presence at the hearing was necessary for the court to learn of Morris's wishes regarding his future. Section 4007(2) of the Child Protection Act, however, abrogates the hearsay rule as it would apply to reports of Morris's out-of-court statements.[3] *See* 22 M.R.S.A. § 4007(2) (1992). As a result, the parties had an extensive ability to present Morris's wishes regarding his placement without requiring his presence. Indeed, in this case, all parties, including the mother, took full advantage of Section 4007(2) and adduced substantial evidence about Morris's wishes. Her argument therefore is nothing more than the assertion that Morris's presence alone at the hearing would be highly probative and that it was prejudicial to her case to be unable to hear his voice. The court did not abuse its discretion in refusing to require Morris's testimony.

[¶ 8] She next argues that Dr. Rassmussen's report was privileged and should have been excluded. The psychiatrist-patient privilege did not exist at common law and is a statutory creation.[4] *See State v. Lewisohn,* 379 A.2d 1192, 1211 (Me.1977). In the child protection context, however, the Legislature has eliminated the privilege she seeks to rely upon: "The . :.. physician and psychotherapist-patient privileges under the Maine Rules of Evidence ... are abrogated in relation to required reporting, cooperating with the department or a guardian ad litem in an investigation or other child protective activity or *giving evidence in a child protec-*

*tion proceeding."* 22 M.R.S.A. § 4015 (1992) (emphasis added). The court properly admitted Dr. Rassmussen's report.

[¶ 9] Finally, the mother argues that there was insufficient evidence to support the termination of her parental rights. We find no merit in her contentions.

The entry is:

Judgment affirmed.

---

required to outweigh the State's significant interest in protecting Morris.

3. The statute provides in pertinent part: "The court may admit and consider oral or written evidence of out-of-court statements made by a child, and may rely on that evidence to the extent of its probative value." 22 M.R.S.A. § 4007(2) (1992).

4. The privilege is located in M.R. Evid. 503, which provides in pertinent part: "A patient has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of diagnosis or treatment of the patient's physical, mental or emotional condition, including alcohol or drug addiction ...." M.R. Evid. 503(b).