MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2018 ME 19
Docket:      Kno-17-328
Argued:      December 14, 2017
Decided:     January 30, 2018

Panel:      SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.
Majority:   SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.
Concurrence:SAUFLEY, C.J.

ADOPTION OF PAISLEY

ALEXANDER, J.

[¶1]   The appellants, the adoptive parents of two of Paisley's five biological siblings, appeal from a judgment of the District Court (Rockland, *Sparaco, J.*) denying their petition to adopt Paisley and granting the petition of the appellees, Paisley's foster parents, to adopt her.

[¶2]   The appellants argue that they have standing to appeal the trial court's adoption decree granting the foster parents' petition to adopt Paisley. They challenge the trial court's finding that, pursuant to 18-A M.R.S. § 9-302(a)(3) (2017), the Department of Health and Human Services acted unreasonably in withholding consent to the adoption of Paisley by the foster

2

parents. The appellants also challenge the trial court's admission of testimony by the foster parents' expert witness, a child attachment specialist.[1]

[¶3] In this appeal, we consider the application of the consent to adoption statute, 18-A M.R.S. § 9-302 (2017), to contested adoption proceedings heard in the District Court following a District Court judgment terminating parental rights concerning that child. *See* 22 M.R.S. §§ 4050-4056 (2017). Adoption proceedings following State initiated proceedings to terminate parental rights are heard in the District Court. *See* 4 M.R.S. § 152(5-A) (2017); 18-A M.R.S. § 9-103 (2017). *See also Adoption of Isabelle T.*, 2017 ME 220, ¶ 9 n.2, --- A.3d ---.

[¶4] As relevant to this appeal, 18-A M.R.S. § 9-302(a) states:

(a) Before an adoption is granted, written consent to the adoption must be given by:

. . . .

(3) The person or agency having legal custody or guardianship of the child or to whom the child has been surrendered and released, except that the person's or agency's lack of consent, if adjudged unreasonable by a judge . . . may be overruled by the judge. In order for the judge to find that the person or agency acted unreasonably in withholding consent, the petitioner must prove, by a preponderance of the evidence, that the person or agency acted unreasonably. The court may hold a pretrial conference to determine who will proceed. The court may determine that even

---

[1] The appellants further argue that the court erred in admitting a photo and video collage offered by the foster parents. This argument is not persuasive and will not be discussed further.

though the burden of proof is on the petitioner, the person or agency should proceed if the person or agency has important facts necessary to the petitioner in presenting the petitioner's case. The judge shall consider the following:

> (i) Whether the person or agency determined the needs and interests of the child;
>
> (ii) Whether the person or agency determined the ability of the petitioner and other prospective families to meet the child's needs;
>
> (iii) Whether the person or agency made the decision consistent with the facts;
>
> (iv) Whether the harm of removing the child from the child's current placement outweighs any inadequacies of that placement; and
>
> (v) All other factors that have a bearing on a determination of the reasonableness of the person's or agency's decision in withholding consent.

. . . .

A petition for adoption must be pending before a consent is executed.

[¶5] Here, Paisley's parents' rights had been terminated, and because the Department had legal custody of Paisley, section 9-302(a)(3) required that, before any adoption could be granted, the Department's written consent had to be obtained. The Department's refusal to grant consent to adoption by the appellees and its consent to adoption by the appellants was the focus of the

District Court hearing. After the hearing, the court, applying section 9-302(a)(3), found that the appellees—the foster parents—had met their burden to prove "by a preponderance of the evidence" that the Department had acted unreasonably in withholding its consent to their adoption of Paisley.

[¶6] Because the evidence admitted at the trial on the competing petitions for adoption supports the trial court's findings and discretionary determinations, we affirm the judgment.

## I. CASE HISTORY

[¶7] The following findings, all of which are fully supported by the record, were made by the court in its decision. Paisley was born in October 2015. When she was just twelve days old, the Department took custody of her and placed her into the home of licensed foster parents, the appellees.

[¶8] Title 22 M.R.S. § 4036-B requires the Department to notify relatives when a child enters foster care. *See* 22 M.R.S. § 4036-B(3-A) (2017) (requiring the Department to notify the following relatives: all grandparents of the child; all parents of a sibling of the child who have legal custody of the sibling; and other adult relatives of the child).

[¶9]   When Paisley was placed in foster care, the appellants, who had previously adopted two of Paisley's biological siblings[2] and who live in Massachusetts, received the Department's notification, pursuant to 22 M.R.S. § 4036-B(3-A).   They immediately contacted the Department, stating their interest in serving as a placement for Paisley.

[¶10]   At that time, the Department's plan for Paisley was reunification with her mother, who resided in mid-coast Maine.  Accordingly, the Department chose to leave Paisley in the care of her foster parents.  The record indicates that the Department was concerned that placing Paisley with the appellants in southern Massachusetts would make its efforts toward reunification with the mother in mid-coast Maine much more difficult.

[¶11]   While Paisley resided with her foster parents, the Department engaged in reunification efforts with Paisley's mother.[3]   During this time, the appellants were in regular contact with the Department, seeking to set up visitation with Paisley and to make the Department aware that they were interested in being the permanent adoptive placement for Paisley.  In January

---

[2]   The record reflects that Paisley has five biological siblings: two sisters who live with their adoptive parents, the appellants, in southern Massachusetts; a brother and a sister who live with Paisley's paternal grandmother, near Paisley's foster parents in mid-coast Maine; and a half-brother who lives with his biological father in Maine.

[3]   Paisley's father was incarcerated and did not participate in any reunification efforts with Paisley.

6

of 2016, a Department supervisor notified the appellants that the Department was "going to look into getting an Interstate Compact on Placement of Children ('ICPC')" evaluation started. The Department initiated that process in March of 2016.

[¶12] On June 1, 2016, the Department filed its petition for termination of the parents' rights and, in that month, the appellants had their first visit with Paisley. Despite the filing of the termination petition, reunification efforts continued, and the Department remained "hopeful" that the mother would be able to reunify. In December of 2016, however, the mother relapsed, was incarcerated, and reunification efforts with the mother ceased.

[¶13] On December 16, 2016, a Department supervisor directed the caseworker to tell Paisley's foster parents that, if the mother's rights were terminated, the Department intended to place Paisley in Massachusetts with the appellants. The foster parents told the caseworker that they had called an attorney "to possibly fight DHHS's placement decision." The Department attempted to have the two families meet but, when that meeting did not occur, and "with the threat of litigation looming," the Department backed off on any firm decision about Paisley's placement. Soon thereafter, both the appellants and the appellees moved to intervene in the child protection action. In

February of 2017, before any termination order issued, the foster parents filed a petition for adoption.

[¶14] Paisley's parents consented to a termination of their parental rights on March 6, 2017, and the permanency plan for Paisley became adoption.[4] The appellants filed a competing petition to adopt Paisley on April 10, 2017.

[¶15] On April 24, 2017, the court issued a case management and pretrial order that listed all three docket numbers: the child protection docket number and the two family matter docket numbers assigned to the competing adoption petitions. The order granted intervenor status to both the appellees and the appellants. The matters were then set for a contested adoption hearing.

[¶16] In late May, approximately two weeks before the date set for the contested adoption hearing, the Department decided that Paisley should be placed with the appellants in Massachusetts with two of her siblings and that it would not consent to adoption by the foster parents.

[¶17] At about the same time as the Department's consent decision, the foster parents notified the appellants and the court that they intended to offer at trial the expert witness testimony of a specialist in early childhood

---

[4] At the termination hearing, both parents expressed to the court their belief that Paisley should stay with the appellees because of Paisley's bond with the appellees' family.

8

attachment. On May 30, 2017, the District Court held a telephone conference to address the objection by the appellants to the foster parents' late designation of the expert witness. After the conference, the court issued an order allowing the foster parents to call their witness. The court also indicated that it would leave the record open to allow the appellants to call their designated rebuttal witness. The appellants never called their identified rebuttal witness, and there is no evidence in the record that the appellants sought to have their witness testify at another time, an opportunity offered by the court.

[¶18] On June 6 and June 7, 2017, the District Court held a hearing on the competing petitions for adoption. During the hearing, all prospective adoptive parents testified and described their plans and commitment to the care of Paisley. The Department's witnesses testified that the decision that Paisley should be placed with the appellants and that it would not consent to adoption by the foster parents was made in late May, approximately two weeks before the date set for the contested adoption hearing. In its decision, the court noted that the supervisor who testified about this issue did "not know who actually

made the decision but understood that it was made because of DHHS's sibling policy."[5]

[¶19]  The appellees called their expert witness, a specialist in early childhood attachment.  The appellants renewed their objection to this witness, arguing again that her designation was untimely.  The court overruled the objection and allowed the testimony.

[¶20]  Paisley's guardian ad litem recommended that the court grant the foster parents' petition to adopt Paisley.  In its decision, the court quoted from the GAL's most recent report, in which she stated that Paisley "regards her foster parents as her parents . . . ."

[¶21]  On June 29, 2017, the District Court issued a single order that was entered in all three cases: (1) finding that the Department unreasonably withheld its consent to the foster parents' adoption petition; (2) granting their petition to adopt Paisley; and (3) denying the appellants' petition to adopt Paisley.  In the order, the court found:

> [The Department's] consideration of Paisley's needs and best interest was, at best, narrowly confined to the fact that the [appellants] have adopted two of Paisley's biological siblings. There is no evidence that [the Department] gave weight to any

---

[5] This policy states: "Placement of siblings together should be made a priority in case planning and implementation of the case plan.  Valid reasons must be identified and documented for not placing siblings together."

other factor relevant to Paisley's best interest, including the bond that had formed between Paisley and the [foster parents]. This conclusion is reinforced by [the permanency supervisor's] admission that she did not even read the GAL report and recommendation.

. . . .

The court finds that the harm of removing Paisley from the [foster parents'] home outweighs any inadequacies of that placement, specifically the fact that Paisley will not be living with biological siblings. Paisley has formed a strong attachment to the [foster parents'] family . . . . For Paisley, [the foster parents] are her parents and their two children are her siblings.

. . . .

While the court recognizes the importance and purpose of [the Department's] sibling policy, the court notes that some of the important reasons for that policy are not present in this case. . . . Here, the policy is being applied to unite Paisley with some of her biological siblings at the cost of separating her from those persons with whom she has come to know as her family. Here, Paisley can still have a meaningful sibling relationship with her biological siblings and the [appellants'] entire family without subjecting her to the trauma of separating her from the [foster parents], the family that she has come to know as her own.

. . . .

Paisley's relationship with [the foster parents] is one of parent and child. Paisley does not have the same depth of bond with the [appellants]. The court finds that it would be in Paisley's best interest for [the foster parents] to adopt her.

[¶22] The appellants timely filed a notice of appeal.

## II. LEGAL ANALYSIS

A.    Standing

[¶23]  We review the threshold issue of a party's standing to sue de novo. *Lowry v. KTI Specialty Waste Servs., Inc.*, 2002 ME 58, ¶ 4, 794 A.2d 80.  Standing requires that the party seeking review have a sufficient personal stake in the controversy and have suffered an injury that is likely to be redressed by the judicial relief sought.  *Halfway House, Inc. v. City of Portland*, 670 A.2d 1377, 1380 (Me. 1996).

[¶24]  Here, the appellants were granted intervenor status in the child protective proceeding that gave the District Court jurisdiction over the subsequent adoption petitions.  They participated in that child protection proceeding and, by virtue of their own adoption petition, were parties to the consolidated action in which the court considered the competing adoption petitions.  As parties in the underlying proceeding who have demonstrated that they suffered a "particularized injury," the appellants have standing to pursue this appeal.  *N.E. Ins. Co. v. Young*, 2011 ME 89, ¶ 11, 26 A.3d 794.

B.    The Department's Unreasonableness in Withholding Consent to the Adoption of Paisley by the Foster Parents

[¶25]  The Department's refusal to consent to an adoption can be overridden by the court if the court finds that the Department acted

unreasonably in withholding consent. 18-A M.R.S. §9-302(a)(3); *see also Adoption of Michaela C.*, 2004 ME 153, ¶ 3, 863 A.2d 270.

[¶26] Pursuant to 18-A M.R.S. § 9-302(a)(3), the court must consider the following factors in determining whether the Department acted unreasonably in withholding consent: (1) whether the Department determined the needs and interests of the child; (2) whether the Department determined the ability of the petitioner and other prospective families to meet the child's needs; (3) whether the Department's decision was consistent with the facts; (4) whether the harm of removing the child from the child's current placement outweighs any inadequacies of that placement; and (5) all other factors that have a bearing on a determination of the reasonableness of the Department's decision in withholding consent. *Id.* The adoption petitioner, from whom the Department has withheld consent, bears the burden of proving, "by a preponderance of the evidence," that the Department acted unreasonably. *See id.*

[¶27] The appellants argue that the court erred by finding that the Department acted unreasonably when it withheld consent from the foster parents to adopt Paisley. We review findings of fact for clear error and discretionary determinations for an abuse of discretion. *See In re Thomas H.*, 2005 ME 123, ¶¶ 16-17, 889 A.2d 297; *In re Morris D.*, 2000 ME 122, ¶ 6,

754 A.2d 993. Further, where, as here, the court made findings on all issues required to be addressed by the relevant statute and the appellants did not request further findings of fact, we will infer that the trial court found all the facts necessary to support its judgment, if those findings are supported by competent evidence in the record. *See In re Guardianship of Ard*, 2017 ME 12, ¶ 15, 154 A.3d 609.

[¶28]  The court's finding that the Department acted unreasonably is supported by competent evidence in the record. The court applied 18-A M.R.S. § 9-302(a)(3), addressed each statutory factor individually, and made findings as to each factor that support the court's ultimate finding that the Department acted unreasonably in withholding its consent to adoption by the foster parents.

[¶29]  The court specifically found that (1) the Department's decision that Paisley should be placed with the appellants was primarily based on the Department's policy of placing siblings together; (2) the Department failed to consider other factors relevant to Paisley's needs and best interest, including the bond between Paisley and her long-term foster family; and (3) the Department failed to give adequate consideration to the harm Paisley would experience if removed from the care of the foster parents. The court found that

14

"the harm of removing Paisley from [her current home] outweighs any inadequacies of that placement, specifically the fact that Paisley will not be living with biological siblings." Additionally, the court found that Paisley, if adopted by her foster parents, will be able to have a meaningful relationship with her biological siblings without being subjected to the trauma of being removed from the appellees, the only caregivers she has known.[6]

[¶30] The court's finding that the Department acted unreasonably in withholding consent of the adoption of Paisley by the foster parents is supported by competent evidence in the record. When the Department's own representative at trial was unable to identify the Department's decision-maker or the details of the analysis that went into the decision, the Department's position became less than compelling.

[¶31] The court demonstrated that it understood the distinct roles it and the Department played in this proceeding.[7] The Department, as the child's legal

---

[6] There is ample record evidence indicating the commitment of the foster parents and the appellants to maintaining strong sibling relationships between Paisley and her five biological siblings, regardless of Paisley's adoptive placement.

[7] Section 9-302 directs that the burden of proof to be applied in determining whether "[t]he person or agency having legal custody" has unreasonably denied consent for adoption is a preponderance of evidence. 18-A M.R.S. § 9-302(a)(3) (2017). This low standard can be applied only because the Department does not have any "fundamental" parental rights and responsibilities; in acting as the child's caretaker, its responsibility is to assist the court in making a wise decision about the child's future.

guardian, has an obligation to find an appropriate adoptive home for the child. Having done so, it is then in a position solely to offer its expertise to assist the court in determining whether the actual adoption of that child into that home is in the child's best interest. *See Stout v. Tippecanoe County Dep't of Pub. Welfare*, 395 N.E.2d 444, 450-451 (Ind. Ct. App. 1979). In the end, however, only the court may grant an adoption based on its independent determination of what is in a child's best interest.

C.     Expert Witness Testimony

[¶32]   The appellants argue that the trial court erred and abused its discretion by allowing the foster parents' untimely designation of an expert witness. Specifically, they argue that they were unfairly prejudiced as they were unable to prepare for the witness given the late designation.

[¶33]   "We review a court's foundational finding that expert testimony is sufficiently reliable for clear error and review for an abuse of discretion a court's decision to admit an expert's opinion after finding it reliable." *State v. Maine*, 2017 ME 25, ¶ 16, 155 A.3d 871. Further, we have held that a court does not abuse its discretion by permitting the testimony of a late designated expert witness when the opposing party is not "unfairly surprised." *See Estate of*

*O'Brien-Hamel*, 2014 ME 75, ¶¶ 23-24, 93 A.3d 689; *Bray v. Grindle*, 2002 ME 130, ¶ 9, 802 A.2d 1004.

[¶34]  Here, the court did not err or abuse its discretion by allowing the foster parents' expert witness, identified nearly two weeks prior to trial, to testify.  Nothing in the testimony of the specialist in early childhood attachment was an unfair surprise to the appellants.  Upon a motion by the appellants, the court held a telephonic hearing on the late expert witness designation—a designation made nine days after the deadline.

[¶35]  The court issued an order the day of the telephonic hearing allowing the expert to testify and keeping the record open to allow the appellants to present their own expert witness at a later date, which they never sought to do.  Although the foster parents made their expert witness available to the appellants for questioning on an informal basis prior to hearing, the appellants did not take advantage of that opportunity.  The court did not err or abuse its discretion by allowing the testimony of the foster parents' expert witness.

The entry is:

> Judgment affirmed.

––––––––––––––––

SAUFLEY, C.J., concurring.

[¶36]  I must reluctantly concur in the court's opinion, particularly given the child's attachment to her foster family in Maine.  I write separately, however, because the State's delays in establishing a solid contact schedule with the Massachusetts family have led to the sad result that Paisley will be deprived of the opportunity to grow up in an available family with her biological siblings.

[¶37]  I do not underestimate the complexity of scheduling visits between an infant and a family that is not local, nor do I question the reasons for placing a child in a location close to her parent for reunification purposes.  And Paisley is certainly fortunate to have been placed in a foster home where she is loved and has been well cared for.

[¶38]  Nonetheless, had the Department acted more expeditiously and more assertively to establish a relationship between Paisley and the family of her sisters, she could have been adopted into the same family and had the benefit of a childhood and adolescence spent with her own sisters.  The value of that family connection appears to have been lost in the Department's slow response to the Massachusetts family's availability, and those actions have cost this child dearly.

18

[¶39]  The Legislature has explicitly established kinship placement as a high priority for children who cannot be raised by their parents: "Recognizing that the health and safety of children must be of paramount concern and that the right to family integrity is limited by the right of children to be protected from abuse and neglect and recognizing also that uncertainty and instability are possible in extended foster home or institutional living, it is the intent of the Legislature that this chapter . . .[p]lace children who are taken from the custody of their parents with an adult relative when possible."  22 M.R.S. § 4003(3-A) (2017).  By urging the consideration of kinship care, the Legislature has certainly signaled that a home where a child's siblings reside should be considered for placement when possible.[8]

[¶40]  Especially in light of the tragedies caused by the opioid addiction epidemic, it is important to honor the Legislature's purpose to provide for the early placement of children whose parents cannot care for them with other family members so that the children can grow up with a strong sense of family identity and are not deprived of the lifetime connection that a childhood and adolescence shared with siblings or other relatives can provide.

---

[8] A more explicit consideration of sibling placement by the Legislature would be helpful. *See also* 22 M.R.S. §§ 4036-B(3-A), 4038-C(3) (2017).

Kevin P. Sullivan, Esq. (orally), Sullivan Law, P.C., Augusta, for appellants, adoptive parents of two of Paisley's biological siblings

Sarah Irving Gilbert, Esq. (orally), Elliott, MacLean, Gilbert & Coursey, LLP, Camden, for appellee foster parents

Janet T. Mills, Attorney General, and Meghan Szylvian, Asst. Atty. Gen. (orally), Office of the Attorney General, Augusta, for appellee Department of Health and Human Services

Rockland District Court docket numbers FM-2017-31, 72
FOR CLERK REFERENCE ONLY