MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2018 ME 63
Docket:      Ken-17-408
Argued:      March 7, 2018
Decided:     May 8, 2018

Panel:       SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.
Majority:    SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, HJELM, and HUMPHREY, JJ.
Concurrence: JABAR, J.

## ADOPTION OF PARKER J.

ALEXANDER, J.

[¶1]  This appeal arises from an adoption proceeding in the District Court (Augusta, *Nale, J.*) following the termination of the parental rights of the biological parents of Parker J.  During the pendency of the child protective proceeding and following the termination of parental rights, the Department of Health and Human Services placed Parker in the care of his maternal grandmother.  Beginning approximately a year after the termination of parental rights, competing petitions for adoption of Parker were filed by (1) Parker's paternal grandmother, (2) Parker's maternal grandmother, and (3) Parker's maternal grandfather and his wife.

[¶2]  The competing adoption petitions were consolidated, and a hearing was held in the District Court.  At the hearing,

1.  Parker's paternal grandmother was represented by counsel.  The same attorney also apparently represented an individual who was in a

long-term relationship with Parker's paternal grandmother and who testified that he wanted to adopt Parker, although he had filed no adoption petition signifying a commitment to adoption.

2.  Parker's maternal grandmother was represented by counsel.  Her petition for adoption was supported by the Department, which was separately represented by an assistant attorney general who played the primary role in presenting the case supporting adoption by the maternal grandmother.  The maternal grandmother and the Department are each represented by different counsel on this appeal.

3.  Parker's maternal grandfather and his wife, who jointly petitioned for adoption, were unrepresented but actively participated in the hearing.

[¶3]  The court generally allowed the competing petitioners to fully present their cases and to examine opposing parties and witnesses at the hearing.

[¶4]  At the conclusion of the three-day hearing, and without taking a recess, the court announced its decision from the bench, denying the adoption petition of the maternal grandmother, denying the joint adoption petition of the maternal grandfather and his wife, and granting the adoption petition of the paternal grandmother while also granting an adoption to the partner of the paternal grandmother, although that individual had not petitioned for adoption or otherwise signaled any formal commitment to the adoption.  The court requested that the prevailing party prepare a written decision consistent with the decision it had stated orally on the record.

[¶5]  When the written decision was entered, Parker was transferred to the care of the paternal grandmother and her partner.  The maternal grandmother and the Department petitioned the trial court for a stay of its order pending appeal.  The trial court denied the petition.  Although allowable in appellate practice, no petition seeking a stay of the trial court decision pending appeal was filed with this Court.  *See* M.R. App. P. 6(a)(4); *Bangor Historic Track, Inc. v. Dep't of Agric., Food & Rural Res.,* 2003 ME 140, ¶¶ 9-12, 837 A.2d 129; *see also Respect Me. PAC v. McKee*, 622 F.3d 13, 15 (1st Cir. 2010).

[¶6]  The Department and the maternal grandmother of Parker now appeal from the judgment denying the maternal grandmother's petition to adopt Parker, granting the adoption to Parker's paternal grandmother on her petition, and also granting adoption, despite the lack of any petition, to the paternal grandmother's partner.  The maternal grandmother contends, among other points on appeal, that the court erred in granting an adoption to the paternal grandmother's partner.

[¶7]  Because the paternal grandmother's partner did not petition for adoption and has no formal commitment to the child or even, as conceded at oral argument, to the paternal grandmother, and because the trial court

4

considered and decided the matter treating the paternal grandmother and her partner as if they were joint petitioners, a decision that we cannot now sever on appeal, we must vacate the judgment and remand for further proceedings.

## I. CASE HISTORY

[¶8]  The record contains the following procedural history.  Parker was born drug-affected in May 2013 to his mother and father, who were not married.  At the time, Parker's parents were living in housing arranged by the paternal grandmother.  When he was approximately four months old, Parker's mother voluntarily placed him with her mother, Parker's maternal grandmother.

[¶9]  In December 2013, the Department filed a petition for a child protection order.  The District Court (*Dow, J.*) granted the petition and issued an order placing Parker in the custody of the Department.  Parker remained in the care of his maternal grandmother, and the Department facilitated visitation with Parker's paternal grandmother.  After Parker's mother and father failed to successfully engage in reunification services, the Department petitioned for the termination of their parental rights in June 2015.

[¶10]   Two years after Parker was placed in the custody of the Department, the court (*E. Walker, J.*) terminated Parker's parents' rights.[1]  The court continued to hold judicial review and permanency planning hearings, and Parker remained in the custody of the Department and in the care of his maternal grandmother.  The relationship between the maternal grandmother and the paternal grandmother was contentious.  Visitation with the paternal grandmother ceased for several months in 2016 but later resumed.

[¶11]   In August 2016, without the consent of the Department, the paternal grandmother filed a petition to adopt Parker.  *See* 18-A M.R.S. §§ 9-301 to 9-303 (2017).  Although the petition form provided space in several locations for the name of a joint petitioner, the paternal grandmother affirmatively crossed out the provided spaces, filled in her own name, or wrote "N/A at present time."  Around the same time, the maternal grandmother signed an adoptive placement agreement with the Department.

[¶12]   In October 2016, the Department consented to adoption by the maternal grandmother, *see* 18-A M.R.S. § 9-302(a)(3), and she filed a petition to adopt Parker.  In March 2017, Parker's maternal grandfather and his wife filed

---

[1] The father consented, in writing, to the termination of his parental rights.  The mother's parental rights were terminated after notice and a hearing.

a petition to adopt Parker. The three competing adoption petitions were consolidated for a final hearing (1) to determine whether the Department acted unreasonably by withholding consent from the paternal grandmother or from the maternal grandfather and his wife, and (2) to grant an adoption after determining which petitioner would serve the best interest of the child.

[¶13] The court (*Nale, J.*) held a three-day hearing on July 11-13, 2017. The court heard the testimony of a dozen witnesses and admitted numerous exhibits. One of the witnesses was the paternal grandmother's partner of ten years who, in a two question and answer colloquy with his counsel, testified that he would like to adopt Parker with the paternal grandmother.

[¶14] At the close of evidence, the court announced its decision from the bench, stating oral findings on the record. The court concluded that the Department acted unreasonably by withholding consent from the paternal grandmother and her partner and from the maternal grandfather and his wife. The court then considered the requirements of 18-A M.R.S. § 9-308(a) (2017) and found that each of the petitioners had satisfied each of the statutory requirements. Specifically, the court found that the petition of the paternal grandmother and her partner was in order.

[¶15]   Considering the best interest factors listed in 18-A M.R.S. § 9-308(b) (2017), the court granted an adoption to the paternal grandmother and her partner.  The court found that all of the parties "love and are loved by" Parker and that "there is a tremendous amount of affection and emotional ties between the petitioners and the child."  The court further found that all of the parties have the capacity to meet Parker's needs, but that the paternal grandmother and her partner have the proper "disposition."  In reaching its decision, the court did not consider the four-year bond between Parker and the maternal grandmother resulting from her caring for Parker after he was placed with her by the Department.

[¶16]   At the court's request, the paternal grandmother submitted a proposed final decree of adoption after the hearing.  The proposed decree submitted by the paternal grandmother included a finding that she had the capacity—"along with the support and assistance of her long term partner"— to meet Parker's needs, but the proposed decree purported to grant the adoption to her alone.

[¶17]  After the court stated its decision on the record, the parties filed several post-judgment motions.  The Department filed a motion to stay pursuant to M.R. Civ. P. 62(a), arguing that the Department and other parties

would likely file an appeal and additional post-judgment motions and that maintaining the current custody and visitation arrangement would avoid disruption of Parker's life. The maternal grandmother filed a response to the proposed decree challenging the court's grant of adoption to the paternal grandmother's partner when he did not file a petition, was not married to the paternal grandmother, and did not live with her. The maternal grandmother also filed a motion to reconsider pursuant to M.R. Civ. P. 59(e). The court denied all of the motions without comment.

[¶18] On August 15, 2017, the court issued a written judgment granting the adoption to the paternal grandmother and her partner. The court reaffirmed its determination that the Department acted unreasonably by withholding consent. Reviewing the five statutory considerations, the court found that (1) the Department relied too heavily on the amount of time that Parker had been in the maternal grandmother's care, (2) the paternal grandmother and her partner are more financially secure than the maternal grandmother, (3) the Department's decision was inconsistent with the facts, and (4) the harm of leaving Parker in the maternal grandmother's home would be greater than the harm of removing him.

[¶19]  The court added that stability was a significant factor in its determination.  Specifically, the court found that the paternal grandmother and her partner have been in a relationship for a decade, have lived together for nearly a decade, and are financially secure, whereas the maternal grandmother has lived in multiple residences in recent years, has had several male partners, has indicated that she would move out of Maine, and receives assistance in caring for Parker.  The court found that, although all of the petitioners have the capacity to address the physical, medical, and educational needs of Parker, the paternal grandmother and her partner have the greatest capacity.

[¶20]  After the court entered its written decision, the Department timely filed a motion for reconsideration and for further findings of fact pursuant to M.R. Civ. P. 52(b), 59(e), and 60(b)(6), which the court denied without comment.  The Department and the maternal grandmother timely filed notices of appeal.  *See* 18-A M.R.S. § 9-309 (2017); M.R. App. P. 2A(a), (b)(1), 2B(c).

## II.  LEGAL ANALYSIS

[¶21]  The Department and the maternal grandmother raise several issues on appeal.  Both the Department and the maternal grandmother argue that the court abused its discretion in finding that the Department acted unreasonably by withholding consent from the paternal grandmother.  The

10

Department further argues that the court abused its discretion by denying its motion to stay the judgment pending appeal. The maternal grandmother argues that the court's factual findings are not supported by competent evidence in the record; that the court abused its discretion in weighing the evidence; and that the court's findings are insufficient, as a matter of law, to support the court's best interest determination. She further argues that the court erred by granting an adoption to the paternal grandmother's partner when he did not petition for adoption. Because we conclude that the court erred in granting an adoption to the paternal grandmother's partner and that a redetermination of the factual findings is necessary, we reach only that argument and do not address the parties' remaining arguments.[2]

[¶22] The grant or denial of an adoption petition is among the most serious and final actions any court can take. Such petitions invoke the fundamental constitutional rights of petitioners and of the child or children addressed in the proceeding. The effects, commitments, and relationships resulting from the grant of an adoption petition are lifelong. Accordingly, the

---

[2] Despite an order issued by this Court (*Gorman J.*) after the parties filed their notices of appeal requesting briefing of the issue of standing, the Department failed to address in its brief whether it had standing to challenge the trial court's denial of its motion to stay. Furthermore, the Department did not seek an order from this Court to stay the trial court's judgment. *See* M.R. App. P. 6(a)(4). Accordingly, the issue is deemed waived. *See Bayview Loan Servicing, LLC v. Bartlett,* 2014 ME 37, ¶ 15 n.5, 87 A.3d 741.

procedural prerequisites for adoption are rigorous and must be strictly followed.

[¶23]  "A legal adoption results if the statutory procedures are followed, but an adoption fails if any essential requirement of the operative adoption statute is not fulfilled." *In re Melissa C.*, 516 A.2d 946, 947 (Me. 1986); *accord Blue v. Boisvert*, 143 Me. 173, 178, 57 A.2d 498 (1948).  Title 18-A M.R.S. §§ 9-301 to 9-308 (2017) provides the procedure by which a person may petition to adopt and by which a court may grant an adoption.  Section 9-301 states that a husband and wife jointly or an unmarried person may file a petition for adoption.  Two unmarried persons may jointly petition for adoption. *Adoption of M.A.*, 2007 ME 123, ¶ 31, 930 A.2d 1088.  The petition for adoption must be sworn to by the petitioner and must include certain biographical information, statements, and acknowledgments.  18-A M.R.S. § 9-303.

[¶24]  Upon the filing of a petition, the court must order a background check and direct the Department to conduct a home study and to make a report to the court.  18-A M.R.S. § 9-304.  Under certain defined circumstances, the court may waive the background check and home study requirements.  *Id.* § 9-304(a-1)(1)(i)-(ii), (2).  The court may take other measures such as

12

appointing a guardian ad litem or requiring that the child live for one year in the home of the petitioner before the petition is granted. *Id.* § 9-304(c), (d). After "the petitioner who filed the petition" has been heard or has waived a hearing, the court shall grant an adoption only if the court is satisfied that

> (1) all necessary consents, relinquishments, or terminations of parental rights have been duly executed and filed with the court;

> (2) an adoption study, when required by section 9-304, has been filed with the court;

> (3) a list of all disbursements, when required by section 9-306, has been filed with the court;

> (4) the petitioner is a suitable adopting parent and desires to establish a parent and child relationship with the adoptee;

> (5) the best interests of the adoptee are served by the adoption;

> (5-A) the petitioner has acknowledged that the petitioner understands that the transfer of the long-term care and custody of the child without a court order is prohibited under Title 17-A, section 553, subsection 1, paragraphs C and D; and

> (6) all other requirements of the Adoption Act have been met.

*Id.* § 9-308(a).

[¶25]   Here, the paternal grandmother's partner did not file, either individually or jointly, a petition to adopt Parker. *See id.* § 9-301. The paternal grandmother purposely omitted the name of a joint petitioner by crossing out the spaces provided for a joint petitioner's name and by writing that there was

no joint petitioner "at [the] present time," even though she and her partner had been in a relationship for a decade when she filed the petition. The court and the parties proceeded to trial as if the paternal grandmother's partner was a petitioner; however, it was not until the third day of trial that the paternal grandmother's partner first expressed to the court an interest in becoming an adoptive parent. The issue was not addressed during his cross-examination by the Department, and the maternal grandmother did not cross-examine him at all. In fact, the issue was raised for the first time in the maternal grandmother's post-trial response to the paternal grandmother's proposed decree. In a hearing to determine the best interest of a child and to establish parental rights, it is concerning that none of the parties raised this issue prior to or during the trial.

[¶26] Nevertheless, the trial court was required to ensure that all conditions of the Adoption Act had been met. *See id.* § 9-308(a)(6). Although the trial court purported to have reviewed a petition filed by the paternal grandmother and her partner and concluded that that petition was "in order," the paternal grandmother's partner did not file a petition or join the paternal grandmother's petition as required by sections 9-301 and 9-303. The paternal grandmother's partner's testimony—that he intended to establish a parental

14

relationship with Parker—is insufficient to establish his status as a petitioner. *See* 18-A M.R.S. § 9-102(i) (2017) (defining a "petitioner" as "a person filing a petition to adopt an adult or child, and includes both petitioners under a joint petition, except as otherwise provided").

[¶27]   If testimony alone were sufficient, without filing a petition and undergoing the rigorous prehearing review required by law, any witness at the hearing could have expressed a desire to become an adoptive parent and the court would have been required to entertain that request.  Such a low standard would lead to absurd results and would not comply with the rigorous requirements of the Adoption Act.

[¶28]  Because the paternal grandmother's partner did not file a petition, he did not undergo a mandatory background check or participate in a home study, and the record does not include a waiver of these requirements.[3]  *See id.* § 9-304.   Furthermore, by not filing a petition, the paternal grandmother's partner did not submit a confidential statement to accompany the petition for adoption.  The confidential statement would have provided information about, inter alia, his family history and financial resources and obligations, including

---

[3] The trial court file indicates that background checks for both the paternal grandmother and her partner were not requested and received until after the trial court entered its written judgment. This information was not before the trial court, and, thus, is not a part of the record on appeal.

his marital history, income, net worth, real property holdings, and ongoing support obligations, if any.

[¶29]  The trial court's best interest determination relied, in part, on the combined financial resources of the paternal grandmother and her partner. The evidence in the record, however, falls materially short regarding the paternal grandmother's partner's financial resources and obligations. *Cf. Adoption of Isabelle T.*, 2017 ME 220, ¶¶ 45-46, 175 A.3d 639.  The report submitted by the court-appointed guardian ad litem indicated that the paternal grandmother's partner has previously been married four times, has one child, and owns several parcels of real property.  The paternal grandmother's partner's testimony on these issues was limited.  Moreover, as conceded at oral argument, the record does not indicate that the paternal grandmother's partner has any obligation to financially support her.  Although it is appropriate for a trial court to consider a prospective adoptive parent's support system in determining the best interest of the child, it is the exclusive responsibility of the adoptive parent or parents to meet the child's needs.  Therefore, the court erred by considering the paternal grandmother's partner's financial resources when he was not a petitioner and is not obligated to support the paternal grandmother.

[¶30] Because the court's decision was based on its erroneous assumption that the paternal grandmother's partner was a petitioner, and that error is not harmless, we vacate the judgment and remand the matter to the District Court for a redetermination of the findings and for a reconsideration of its decision. *See Remick v. Martin*, 2014 ME 120, ¶ 10, 103 A.3d 552. Because we remand for the court to reconsider its decision free of the error we address in this opinion, we do not reach the other challenges to the judgment, including, for example, the assertion of the Department and the maternal grandmother that the court erred as a matter of law by concluding that the Department unreasonably withheld its consent to the paternal grandmother's petition, when the Department's position was supported by expert testimony and by the guardian ad litem, and given Parker's long-term stable placement with the maternal grandmother.

The entry is:

> Judgment vacated. Remanded for further proceedings consistent with this opinion.

---

JABAR, J., concurring

[¶31] I concur, but I write separately to discuss what I believe is a shortcoming in 18-A M.R.S. § 9-302 (2017). Specifically, section 9-302(a)(3)

fails to adequately address the Department's obligation in cases where more than one suitable party petitions to adopt a child placed in the Department's custody. We must either interpret the statute to allow the Department to give consent to each suitable party that has petitioned to adopt the child, or the Legislature must act in order to remedy the deficiency within section 9-302.

A.     The Statute and the Department's Interpretation

[¶32]  The statute at issue in this case provides, in relevant part,

## § 9-302. Consent for adoption

**(a)** Before an adoption is granted, written consent to the adoption must be given by:

. . . .

**(3)** The person or agency having legal custody or guardianship of the child or to whom the child has been surrendered and released, except that the person's or agency's lack of consent, if adjudged unreasonable by a judge of probate, may be overruled by the judge.  In order for the judge to find that the person or agency acted unreasonably in withholding consent, the petitioner must prove, by a preponderance of the evidence, that the person or agency acted unreasonably.  The court may hold a pretrial conference to determine who will proceed.  The court may determine that even though the burden of proof is on the petitioner, the person or agency should proceed if the person or agency has important facts necessary to the petitioner in presenting the petitioner's case.  The judge shall consider the following:

**(i)** Whether the person or agency determined the needs and interests of the child;

**(ii)** Whether the person or agency determined the ability of the petitioner and other prospective families to meet the child's needs;

**(iii)** Whether the person or agency made the decision consistent with the facts;

**(iv)** Whether the harm of removing the child from the child's current placement outweighs any inadequacies of that placement; and

**(v)** All other factors that have a bearing on a determination of the reasonableness of the person's or agency's decision in withholding consent.

. . . .

A petition for adoption must be pending before a consent is executed.

The statute as written fails to set forth a procedure for the Department to follow in those cases where, like this case, more than one suitable petitioner seeks to adopt a child. Although section 9-302(a)(3)(ii) contemplates a situation in which other "prospective families" might exist, no part of the statute clarifies whether the Department may, or may not, grant consent to more than one prospective suitable family. Because the Department and the court have distinct roles in adoption proceedings, the Department should not have to decide which of several suitable parties should be given consent to the exclusion of the others; it is for the court to decide which petitioner would serve

the child's best interest. *See Adoption of Paisley*, 2018 ME 19, ¶ 31, 178 A.3d 1228.

[¶33] Unfortunately, in this case, the Department felt that it had to make a choice among competing suitable parties. The assistant program administrator for the Office of Child and Family Services stated at the hearing that he believed the Department can provide consent to only one party. There is no reason why, following the termination of the parental rights of the parents, the Department could not have given consent to all three petitioning parties. Then, the court would have been in the position to decide which petitioner would serve the child's best interest. If there are numerous parties requesting an adoption, and one of them is not suitable, the Department can and should withhold consent. However, where more than one suitable petitioner exists, as here, the Department can and should provide its consent to all suitable parties. In this case, there is no question that if any of the three grandparents were the only petitioning party, the Department would have granted its consent. It was only because the Department mistakenly believed that it had to make a choice that it withheld consent to the other two petitioners.

20

B.      The Result of the Department's Interpretation

[¶34]  This position taken by the Department forces it to pick winners and losers when there are several suitable parties, and as a result of choosing sides, the Department puts its thumb on the scale in favor of the party that it selects.  The chosen party then has the weight and resources of the State on its side, and due to the Department's early position in a given case, the chosen party gains an unfair advantage.  In this case, due to the Department's decision to choose the maternal grandmother early on, she was afforded a great deal more contact with the child during the pendency of the case.  The guardian ad litem's report included the following synopsis:

> [The maternal grandmother] has been [the child's] primary caregiver, almost since his birth.  It is difficult to overstate the importance of this factor. . . .  Further, that [the paternal grandmother and her partner] actively sought to be as involved with [the child] as they could be.  For a period of time, he was spending overnights and nearly half of each week with them.  Over their strenuous objection, some combination of [the Department] and [the maternal grandmother] severely curtailed that contact.  For a while, it dwindled to almost nothing until an order by [the District Court] established regular visitation late last year.  It may well be that the curtailment of their contact was an unwarranted mistake.

The court, after reading this portion of the report aloud, stated on the record, "That bothers me.  I believe that a rush to judgment was made.  I believe that a mistake was made."  As a result of the Department's early intervention on the

maternal grandmother's behalf, she became the primary caregiver of the child, and this exclusive relationship led to many of the witnesses indicating that the reason they thought that the maternal grandmother was the best choice for adoption was due to the amount of time he had already spent with the maternal grandmother. Specifically, the clinical psychologist and one of the guardians ad litem indicated that all three potential parties were adequate to parent the child. However, both testified that it would be best for the child to remain with the maternal grandmother because he had been living with her throughout this case.

[¶35] Another problem with the Department's early choice was the failure to consider other potentially better placements. One guardian ad litem never considered the other two sets of grandparents because the Department had already made a decision regarding the maternal grandmother, and, she stated, her primary concern "is not necessarily to try to discern better preferred placements for [the child], if where he is seems like a loving and suitable home." The ultimate goal, however, is the child's *best* interest, not merely an acceptable interest.

[¶36] It is easy to see how the maternal grandmother's extensive contact—to the detriment and exclusion of the other grandparents, in which

22

the Department played a significant role—led many of the witnesses to favor adoption by the maternal grandmother. There was no reason in this case to deprive the other loving and capable grandparents of extensive contact with the child during the pendency of the case. One guardian ad litem and the court agreed, stating that in a "perfect world," time could have been divided more equally between all three petitioners.

[¶37] Although in this case the court recognized the early role that the Department played, and did ultimately find for the paternal grandmother, such an outcome will not always be forthcoming. In many cases, the Department's early decision to weigh in on the side of one of the competing parties would unfairly support one party's petition over another's.[4] Such a decision, and the deprivation of access to the child that it results in, could have a significant impact on the witnesses' perception of which petitioner has a deeper bond with

---

[4] In fact, in our recent case *Adoption of Paisley*, that is exactly what happened. 2018 ME 19, 178 A.3d 1228. In *Paisley*, the Department delayed and equivocated in its granting of consent when there was more than one suitable petitioner, and ultimately, we concluded that its withholding of consent was unreasonable. *Id.* ¶¶ 13-17, 30. Speaking to the Department's delay, the Chief Justice stated that "had the Department acted more expeditiously and more assertively to establish a relationship between Paisley and the family [that Paisley had not been placed with during the case]," the outcome may well have been different for Paisley. *Id.* ¶ 38 (Saufley, C.J., concurring). Although Parker's case is not overlaid by the same kinship considerations we addressed in Paisley's case, because any placement for Parker will be a kinship placement, the Department's withholding of consent when there are multiple suitable petitioners is nonetheless problematic whenever it deprives suitable petitioners of visitation and access to the child during the pendency of the case.

the child, and ultimately, the court's decision on which placement would serve the child's best interest.

[¶38] I believe the court's decision was correct as to the three competing grandparents. The court found that all of the parties love and are loved by the child and that all three parties have the capacity to adopt the child. The court properly considered all of the necessary factors and ultimately found that it would be in the child's best interest to be adopted by the paternal grandmother and her partner. In this respect, I disagree with the Court that the issue surrounding the withholding of consent for the paternal grandmother should be reconsidered on remand. Court's Opinion ¶ 30.

[¶39] Although the parties litigated the case as if the paternal grandmother and her partner were requesting adoption, I agree with the Court that it is necessary to remand in order to correct the record and secure more information regarding the paternal grandmother's partner and his commitment to Parker.

24

Janet T. Mills, Attorney General, and Meghan Szylvian, Asst. Atty. Gen. (orally), Office of the Attorney General, Augusta, for appellant Department of Health and Human Services

Deirdre M. Smith, Esq., Carolyn Liegner, Stud. Atty., and Kurt Peterson, Stud. Atty. (orally), Cumberland Legal Aid Clinic, Portland, for appellant maternal grandmother

Dennis L. Jones, Esq. (orally), Farmingdale, for appellees paternal grandmother and her partner

Augusta District Court docket numbers FM-2016-272, 384
FOR CLERK REFERENCE ONLY