JABAR, J., concurring
 

 [¶ 31] I concur, but I write separately to discuss what I believe is a shortcoming in 18-A M.R.S. § 9-302 (2017). Specifically, section 9-302(a)(3) fails to adequately address the Department's obligation in cases where more than one suitable party petitions to adopt a child placed in the Department's custody. We must either interpret the statute to allow the Department to give consent to each suitable party that has petitioned to adopt the child, or the Legislature must act in order to remedy the deficiency within section 9-302.
 

 A. The Statute and the Department's Interpretation
 

 [¶ 32] The statute at issue in this case provides, in relevant part,
 

 § 9-302. Consent for adoption
 

 (a)
 
 Before an adoption is granted, written consent to the adoption must be given by:
 

 ....
 

 (3)
 
 The person or agency having legal custody or guardianship of the child or to whom the child has been surrendered and released, except that the person's or agency's lack of consent, if adjudged unreasonable by a judge of probate, may be overruled by the judge. In order for the judge to find that the person or agency acted unreasonably in withholding consent, the petitioner must prove, by a preponderance of the evidence, that the person or agency acted unreasonably. The court may hold a pretrial conference to determine who will proceed. The court may determine that even though the burden of proof is on the petitioner, the person or agency should proceed if the person or agency has important facts necessary to the petitioner in presenting the petitioner's case. The judge shall consider the following:
 

 (i)
 
 Whether the person or agency determined the needs and interests of the child;
 

 (ii)
 
 Whether the person or agency determined the ability of the petitioner and other prospective families to meet the child's needs;
 

 (iii)
 
 Whether the person or agency made the decision consistent with the facts;
 

 (iv)
 
 Whether the harm of removing the child from the child's current placement outweighs any inadequacies of that placement; and
 

 (v)
 
 All other factors that have a bearing on a determination of the reasonableness of the person's or agency's decision in withholding consent.
 

 ....
 

 A petition for adoption must be pending before a consent is executed.
 

 The statute as written fails to set forth a procedure for the Department to follow in those cases where, like this case, more than one suitable petitioner seeks to adopt a child. Although section 9-302(a)(3)(ii) contemplates a situation in which other "prospective families" might exist, no part of the statute clarifies whether the Department may, or may not, grant consent to more than one prospective suitable family. Because the Department and the court have distinct roles in adoption proceedings, the Department should not have to decide which of several suitable parties should be given consent to the exclusion of the others; it is for the court to decide which petitioner would serve the child's best interest.
 
 See
 

 Adoption of Paisley
 
 ,
 
 2018 ME 19
 
 , ¶ 31,
 
 178 A.3d 1228
 
 .
 

 [¶ 33] Unfortunately, in this case, the Department felt that it had to make a choice among competing suitable parties. The assistant program administrator for the Office of Child and Family Services stated at the hearing that he believed the Department can provide consent to only one party. There is no reason why, following the termination of the parental rights of the parents, the Department could not have given consent to all three petitioning parties. Then, the court would have been in the position to decide which petitioner would serve the child's best interest. If there are numerous parties requesting an adoption, and one of them is not suitable, the Department can and should withhold consent. However, where more than one suitable petitioner exists, as here, the Department can and should provide its consent to all suitable parties. In this case, there is no question that if any of the three grandparents were the only petitioning party, the Department would have granted its consent. It was only because the Department mistakenly believed that it had to make a choice that it withheld consent to the other two petitioners.
 

 B. The Result of the Department's Interpretation
 

 [¶ 34] This position taken by the Department forces it to pick winners and losers when there are several suitable parties, and as a result of choosing sides, the Department puts its thumb on the scale in favor of the party that it selects. The chosen party then has the weight and resources of the State on its side, and due to the Department's early position in a given case, the chosen party gains an unfair advantage. In this case, due to the Department's decision to choose the maternal grandmother early on, she was afforded a great deal more contact with the child during the pendency of the case. The guardian ad litem's report included the following synopsis:
 

 [The maternal grandmother] has been [the child's] primary caregiver, almost since his birth. It is difficult to overstate the importance of this factor.... Further, that [the paternal grandmother and her partner] actively sought to be as involved with [the child] as they could be. For a period of time, he was spending overnights and nearly half of each week with them. Over their strenuous objection, some combination of [the Department] and [the maternal grandmother] severely curtailed that contact. For a while, it dwindled to almost nothing until an order by [the District Court] established regular visitation late last year. It may well be that the curtailment of their contact was an unwarranted mistake.
 

 The court, after reading this portion of the report aloud, stated on the record, "That bothers me. I believe that a rush to judgment was made. I believe that a mistake was made." As a result of the Department's early intervention on the maternal grandmother's behalf, she became the primary caregiver of the child, and this exclusive relationship led to many of the witnesses indicating that the reason they thought that the maternal grandmother was the best choice for adoption was due to the amount of time he had already spent with the maternal grandmother. Specifically, the clinical psychologist and one of the guardians ad litem indicated that all three potential parties were adequate to parent the child. However, both testified that it would be best for the child to remain with the maternal grandmother because he had been living with her throughout this case.
 

 [¶ 35] Another problem with the Department's early choice was the failure to consider other potentially better placements. One guardian ad litem never considered the other two sets of grandparents because the Department had already made a decision regarding the maternal grandmother, and, she stated, her primary concern "is not necessarily to try to discern better preferred placements for [the child], if where he is seems like a loving and suitable home." The ultimate goal, however, is the child's
 
 best
 
 interest, not merely an acceptable interest.
 

 [¶ 36] It is easy to see how the maternal grandmother's extensive contact-to the detriment and exclusion of the other grandparents, in which the Department played a significant role-led many of the witnesses to favor adoption by the maternal grandmother. There was no reason in this case to deprive the other loving and capable grandparents of extensive contact with the child during the pendency of the case. One guardian ad litem and the court agreed, stating that in a "perfect world," time could have been divided more equally between all three petitioners.
 

 [¶ 37] Although in this case the court recognized the early role that the Department played, and did ultimately find for the paternal grandmother, such an outcome will not always be forthcoming. In many cases, the Department's early decision
 to weigh in on the side of one of the competing parties would unfairly support one party's petition over another's.
 
 [4]
 
 Such a decision, and the deprivation of access to the child that it results in, could have a significant impact on the witnesses' perception of which petitioner has a deeper bond with the child, and ultimately, the court's decision on which placement would serve the child's best interest.
 

 [¶ 38] I believe the court's decision was correct as to the three competing grandparents. The court found that all of the parties love and are loved by the child and that all three parties have the capacity to adopt the child. The court properly considered all of the necessary factors and ultimately found that it would be in the child's best interest to be adopted by the paternal grandmother and her partner. In this respect, I disagree with the Court that the issue surrounding the withholding of consent for the paternal grandmother should be reconsidered on remand. Court's Opinion ¶ 30.
 

 [¶ 39] Although the parties litigated the case as if the paternal grandmother and her partner were requesting adoption, I agree with the Court that it is necessary to remand in order to correct the record and secure more information regarding the paternal grandmother's partner and his commitment to Parker.
 

 In fact, in our recent case
 
 Adoption of Paisley
 
 , that is exactly what happened.
 
 2018 ME 19
 
 ,
 
 178 A.3d 1228
 
 . In
 
 Paisley
 
 , the Department delayed and equivocated in its granting of consent when there was more than one suitable petitioner, and ultimately, we concluded that its withholding of consent was unreasonable.
 
 Id.
 
 ¶¶ 13-17, 30. Speaking to the Department's delay, the Chief Justice stated that "had the Department acted more expeditiously and more assertively to establish a relationship between Paisley and the family [that Paisley had not been placed with during the case]," the outcome may well have been different for Paisley.
 
 Id.
 
 ¶ 38 (Saufley, C.J., concurring). Although Parker's case is not overlaid by the same kinship considerations we addressed in Paisley's case, because any placement for Parker will be a kinship placement, the Department's withholding of consent when there are multiple suitable petitioners is nonetheless problematic whenever it deprives suitable petitioners of visitation and access to the child during the pendency of the case.