2004 ME 153

**ADOPTION OF MICHAELA C.**

Supreme Judicial Court of Maine.

Submitted on Briefs: Dec. 8, 2004.
Decided: Dec. 17, 2004.

G. Steven Rowe, Attorney General, Matthew E. Pollack, Asst. Atty. Gen., Aria Eee, Asst. Atty. Gen., Augusta, for appellant.

James E. Mitchell, Geoffrey Smith, Jim Mitchell & Jed Davis, P.A., Augusta, for Linda C.

C.H. Spurling, Gardiner, for Rachel B.

Maureen Dea, Brunswick, for Michael B.

Linda P. Cohen, Hanley & Associates, South Paris, Guardian ad litem.

Panel: SAUFLEY, C.J., and CLIFFORD, DANA, ALEXANDER, and CALKINS, JJ.

CALKINS, J.

[¶ 1] This case presents another chapter in the life of Michaela C., who is about to turn eight years old. Two years ago we affirmed the termination of her mother's parental rights, *In re Michaela C.*, 2002 ME 159, 809 A.2d 1245, but her father's parental rights have not been terminated. Michaela has been living with her paternal grandmother, Rachel, since December 1998, shortly after the Department of Health and Human Services removed her from her mother's home. Michaela's maternal grandmother, Linda, has filed a petition in the York County Probate Court to adopt Michaela, and Rachel has filed an adoption petition in the Sagadahoc County Probate Court. Since Michaela entered Department custody, the District Court, in the child protection proceeding, has overseen her placement and the Department's plans for Michaela. Because of the intersection of the adoption and child protection laws and the jurisdictional limitations of the Probate and District Courts, the adoption proceedings have stalled, and the Department has requested our intervention by appealing the denial of its motion for summary judgment entered in the York County Probate Court (*Nadeau, J.*).

[¶ 2] Although the denial of a summary judgment motion is an interlocutory order, we accept the appeal pursuant to the judicial economy exception to the final judgment rule. We vacate the denial of the Department's summary judgment motion and remand the matter to the York County Probate Court to grant judgment for the Department and deny Linda's petition for adoption.

## I. ADOPTION AND CHILD PROTECTION STATUTES

[¶ 3] To appreciate the interrelationship of the pending proceedings pertaining to Michaela, it is necessary to describe the applicable statutes. The Probate Court has exclusive jurisdiction over adoptions. 18-A M.R.S.A. § 9-103 (1998). Before the court can grant an adoption, it must have the written consent of the child's living parents and the consent of the agency that has legal custody of the child. 18-A M.R.S.A. § 9-302(a)(2), (3) (1998). Consent to adoption is not required of a parent whose parental rights have been terminated, 18-A M.R.S.A. § 9-302(b)(2) (1998), and such parents are not entitled to participate in the adoption proceedings, 22 M.R.S.A. § 4056(3) (2004). The Department's refusal to consent to an adoption may be overruled by the Probate Court if it finds the agency acted unreasonably in withholding consent. 18-A M.R.S.A. § 9-302(a)(3). A party petitioning to adopt may also file a petition to terminate parental rights of one or both of the parents as part of the adoption petition, except when a child protection proceeding is pending or is subject to review by the District Court. 18-A M.R.S.A. § 9-204(a) (1998); 22 M.R.S.A. § 4051 (2004).

[¶ 4] Venue of adoption proceedings, when a child has been placed by the Department, is in the county where the petitioner resides, the child resides or was born, or the Department's office is located. 18-A M.R.S.A. § 9-104(a) (1998). When there are two or more proceedings pending, the proceeding that was commenced first in time "has the exclusive right to proceed." 18-A M.R.S.A. § 1-303(a) (1998); *see also* 4 M.R.S.A. § 253 (1989).

[¶ 5] When "[a]n adoption petition is not finalized within 18 months," the Probate Court is required to conduct a judicial review. 18-A M.R.S.A. § 9-205(a)(3) (1998). At the review hearing, the court must determine whether the proposed adoption "is still a viable plan for the child," and if so, the court shall schedule another judicial review within two years. 18-A M.R.S.A. § 9-205(b) (1998). If the adoption is not a viable plan, the court must give the biological parents the opportunity to present a plan for the child, but if the court determines that placing the child with the parents would constitute jeopardy, the case is to be transferred to the District Court. *Id.*

[¶ 6] The District Court has jurisdiction over child protection proceedings. 22 M.R.S.A. § 4031(1)(A) (2004). Once the District Court enters a jeopardy order, it is required to review the case every six months until the child has been emancipated or adopted. 22 M.R.S.A. § 4038(1), (1-A) (2004). Parents whose rights have been terminated are not entitled to notice of the judicial reviews. 22 M.R.S.A. § 4038(3) (2004).

## II. FACTS

[¶ 7] The background of the child protection proceeding concerning Michaela is described in our opinion affirming the termination of Michaela's mother's parental rights. *In re Michaela C.,* 2002 ME 159, ¶¶ 2-13, 809 A.2d at 1247-50. Michaela was first placed with Rachel in December 1998, and soon thereafter Michaela's moth-

er and father agreed to a jeopardy order. The parental rights of Michaela's mother were terminated in March 2001 by the District Court (Augusta, *Westcott, J.*). Although the Department had petitioned to terminate the father's parental rights, the Department did not proceed with the petition because he indicated he would consent to termination if the mother's parental rights were terminated, *id.* ¶ 1 n. 1, 809 A.2d at 1247, and to date, his rights have not been terminated. The mother appealed the judgment terminating her parental rights. While the appeal was pending, Linda, the maternal grandmother, filed an adoption petition and a petition to terminate the father's parental rights in the York County Probate Court. We affirmed the termination of the mother's parental rights in October 2002, and in December 2002, Rachel filed an adoption petition in the Sagadahoc County Probate Court.

[¶ 8] The Department then sought to transfer venue of Linda's petition to Sagadahoc County, but the York County Probate Court, in denying the motion, stated that it had conferred with the Sagadahoc County Probate Court and learned that the court in Sagadahoc County had stayed that proceeding pending disposition of Linda's petition in York County. The York County Probate Court further ordered a hearing pursuant to 18–A M.R.S.A. § 9–205(a) to determine if the adoption by Linda was viable, and it appointed a guardian ad litem for Michaela.[1]

[¶ 9] In the meantime, the District Court (Augusta, *French, J.*) held a judicial review regarding Michaela and ordered the Department to continue the placement of Michaela with Rachel. The court was aware of the competing adoption petitions, and it

ordered the Department to "proceed with finalization of Michaela's adoption." In our opinion in *In re Michaela C.*, 2002 ME 159, ¶¶ 30, 31, 809 A.2d at 1254, we described the District Court's finding in the termination proceeding that Rachel was a "capable grandparent who is willing to adopt her," and that Rachel could provide the best care for Michaela. In its review order the court reiterated that the permanency plan for Michaela continued to be adoption by Rachel.

[¶ 10] The Department moved for summary judgment in the York County Probate Court. In its statement of material facts, the Department stated that it did not intend to seek an involuntary termination of Michaela's father's parental rights. It further stated that the father would not consent to the adoption of Michaela by Linda, and it referred to an affidavit signed in April 2004 by Michaela's father which stated that he would never surrender and release his parental rights and would never consent to the adoption of Michaela by Linda or by anyone other than Rachel. In her statement of facts opposing the motion for summary judgment, Linda stated that Michaela's father was incarcerated and under indictment. She also alleged that he told her in August 2003 that he did not care who adopted Michaela.

[¶ 11] Michaela's father joined the Department's summary judgment motion, and he filed a motion to dismiss the adoption petition and the petition to terminate his parental rights. Rachel joined the father's motion to dismiss and the Department's motion for summary judgment. The Probate Court guardian ad litem filed a report. After a hearing on both the

---

1. Michaela has a guardian ad litem in the child protection proceeding in the District Court. It is not clear why the Probate Court appointed another guardian ad litem for the child. The guardian appointed by the Probate Court has participated in this appeal by filing a brief.

summary judgment motion and the father's motion to dismiss, the court denied both motions. In its written order denying the Department's motion, the court stated: "The Department, as custodian of the minor, has options available to it that raise a genuine issue as to viability."

## III. DISCUSSION

### A. Interlocutory Appeal

[¶ 12] An order denying a motion for summary judgment is an interlocutory order. The Department urges us to accept the appeal from the nonfinal order for reasons of judicial economy. We apply the judicial economy exception when the merits of a case should be addressed immediately and when the review can establish a final or almost final resolution. *Dep't of Human Servs. v. Lowatchie*, 569 A.2d 197, 199 (Me.1990).

[¶ 13] Linda and the guardian ad litem both argue that there is no immediacy. In fact, Linda suggests that the adoption proceeding should be stayed pending the father's consent, the father's death, or the termination of his parental rights by the District Court in the child protection case. Linda contends that because one Probate Court or the other will still have to act, this appeal will not result in a final or almost final resolution. The guardian argues that it is the Department's refusal to proceed with a petition to terminate the father's parental rights in the District Court that has wasted judicial resources.[2]

[¶ 14] The judicial economy exception is appropriate in a situation such as this where there are proceedings pending in three separate courts in this State involving the same child, particularly when, as here, the pendency of the three proceedings has created a stalemate. Action on Rachel's petition is stayed pending a decision on Linda's petition. As long as the child protection matter is pending in the District Court, no other court can terminate the father's parental rights. 18–A M.R.S.A. § 9–204(a); 22 M.R.S.A. § 4051. Linda's petition cannot be granted unless and until the father consents or the District Court terminates his rights. The Department does not intend to proceed with the termination petition in the District Court because the father will consent to an adoption by Rachel. The Probate Court has no power to order the Department to proceed with the termination petition in the District Court, and because the District Court has approved the permanency plan of an adoption of Michaela by Rachel, it has no need to require the Department to prosecute the termination petition.

[¶ 15] It is well recognized that it is the policy in this State that permanency plans for children, who are the subject of protection proceedings, be implemented so that children will have stability and certainty. *See* 22 M.R.S.A. § 4003 (2004). Children should not be in limbo, caught between courts. Michaela is entitled to the implementation of the best permanency plan available, whether that is adoption or long term foster care. Because the permanency of a child is at stake and because the interrelationship of the adoption and child protection statutes has created a stalemate and is wasting judicial resources, we accept the appeal.

### B. Department's Motion for Summary Judgment

[¶ 16] We review orders on summary judgments de novo. *Lever v. Acadia*

---

2. The guardian is of the opinion that it is in the best interests of Michaela for neither adoption petition to be granted because Michaela presently is in a good and loving home, and she has regular, albeit restricted, visits with her mother and Linda, which could be stopped if Rachel's petition is granted.

*Hosp. Corp.*, 2004 ME 35, ¶ 2, 845 A.2d 1178, 1179.

[¶ 17] The Department's position is that because of the child protection proceeding in the District Court, the Probate Court cannot terminate the father's parental rights, and without the termination of his parental rights or his consent, Linda's adoption petition cannot be granted. Although Michaela's father apparently indicated ambivalence on the subject when talking to Linda, he stated unequivocally in his affidavit that he would not consent to adoption by Linda. Linda argues that there is a factual dispute on this issue, but there is no factual dispute. The father either consents in writing or he does not. No consent in writing has been presented to the York County Probate Court in the more than three years that the case has been pending there.[3]

[¶ 18] Without the father's consent and without the ability to terminate his parental rights, the Probate Court cannot proceed with the adoption. To the extent that section 9–205 allows for a hearing to determine if the adoption petition is viable, no hearing is necessary because the answer is apparent. No adoption is viable without the consent of a parent whose rights have not been terminated.[4]

[¶ 19] Thus, because Linda's petition cannot be granted by the York County Probate Court, the court erred in denying the Department's motion for summary judgment. We remand the matter for the entry of a judgment denying the adoption petition. Such a judgment should have the effect of allowing the Sagadahoc County Probate Court to proceed on Rachel's petition.[5]

The entry is:

Order denying summary judgment to the Department of Health and Human Services is vacated. Case is remanded for entry of judgment for the Department denying the petition for adoption.

---

3. Linda argues that the situation in the Sagadahoc County Probate Court is identical inasmuch as the father has not given his written consent in that court. The difference, however, is that the father has averred that he will consent to his mother's petition but will not consent to Linda's petition.

4. Linda's argument that Michaela's father must first establish his parental rights before he is entitled to consent to an adoption is without merit. She admits that he is Michaela's biological father and that he has signed an acknowledgment of paternity. He is the legal father, 19–A M.R.S.A. § 1616 (1998), notwithstanding the fact that he was not married to Michaela's mother. Although the adoption statute states that consent is not required of a putative father or "a legal father who is not the biological father" under certain conditions, 18–A M.R.S.A. § 9–302(b)(1) (1998 & Supp.2004), Michaela's father is her legal and biological father. As the father, he had full parental rights until those rights were modified by the District Court in the child protection proceeding. *See* 19–A M.R.S.A. § 1651 (1998).

5. We are confident that the Sagadahoc County Probate Court will act expeditiously when hearing the concerns of the interested parties. Although it is not properly before us, the parties have brought to our attention that the venue (mischaracterized by Linda as jurisdiction) of the Sagadahoc County Probate Court is an issue in that case. Rachel and Michaela reside in Kennebec County. Rachel obviously recognized that her petition could not be heard in Kennebec County because the probate judge in that county is Linda's attorney and, therefore, the case would have been transferred if filed in Kennebec. Because Sagadahoc County is a neighboring county, it is an appropriate receiving county of a transfer. It will be an additional waste of precious time and resources if there is an attempt to further delay permanency for Michaela by contesting venue.