MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:       2019 ME 134
Docket:         Aro-19-74
Submitted
  On Briefs:  July 18, 2019
Decided:       August 15, 2019

Panel:          SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, and HJELM, JJ.


IN RE CHILDREN OF DANIELLE H.


PER CURIAM

[¶1]  Danielle H. and Matthew T. appeal from a judgment entered by the District Court (Houlton, *Larson, J.*) finding by clear and convincing evidence that their four children were in circumstances of jeopardy as to each parent and that continued custody of the children by either parent was likely to cause them serious emotional or physical damage.  Each parent contends that (1) the court abused its discretion in relying on out-of-court statements made by the children; (2) the evidence was insufficient to support the court's required factual findings under state and federal law; and (3) the evidence did not support the court's dispositional order.  We address the parents' contentions in turn and affirm the judgment.

A.    Indian Child Welfare Act

[¶2]  As an initial matter, we note that the children, affiliated through their mother with the Houlton Band of Maliseet Indians, are Indian children

within the meaning of the federal Indian Child Welfare Act (ICWA). *See* 25 U.S.C.S. § 1903(4) (LEXIS through Pub. L. No. 116-39); *In re Child of Radience K.*, 2019 ME 73, ¶ 3 n.1, 208 A.3d 380. Accordingly, the Department was required as a matter of Maine law to prove by a preponderance of the evidence that the children were in circumstances of jeopardy as to each parent, 22 M.R.S. § 4035(2) (2018), and required as a matter of federal law to further prove by clear and convincing evidence "that the continued custody of the child[ren] by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child[ren]," 25 U.S.C.S. § 1912(e) (LEXIS through Pub. L. No. 116-39). *See In re Child of Radience K.*, 2019 ME 73, ¶ 22, 208 A.3d 380; *In re Denice F.*, 658 A.2d 1070, 1072 (Me. 1995) (recognizing that in a child protection case, "The state grounds . . . [are] unaffected by the ICWA [and] provide a supplemental degree of protection to parents facing a [child protection] petition . . . . A dual burden of proof—one federal, one state—thus exists in cases involving . . . an Indian child.").

[¶3] Here the District Court made all of its factual findings by the higher standard of proof by clear and convincing evidence. Furthermore, the court found, and the record demonstrates, that the Department and the Band worked together in a cooperative and collaborative way throughout this case, and that

the Band participated fully in the court proceedings. Specifically, the Band's ICWA director was involved in the Department's management of the case from the outset; the court promptly granted the Band's motion to intervene after the Department filed a child protection petition; the Band was represented by its independent counsel at the jeopardy hearing; and the children were placed with appropriate ICWA-compliant custodians. Indicative of the Band's integral role, we note that it joined in the Department's written closing argument in the trial court and has adopted the brief filed by the Department in this appeal.

B.    Children's Out-of-Court Statements

[¶4]   Prior to the jeopardy hearing, the mother, joined by the father, moved in limine to exclude from evidence any hearsay statements by the children. The court denied the motion and the children did not testify at the hearing. As set out in section (C) of this opinion, the court relied on their out-of-court statements in making the factual findings that ultimately resulted in its jeopardy determination. Each parent contends that the court's reliance on the children's hearsay statements violated their fundamental constitutional rights, including their right to due process. *See In re Child of Radience K.*, 2019 ME 73, ¶ 20, 208 A.3d 380.

4

[¶5]  In child protection cases the Legislature has abrogated the rule of evidence that ordinarily renders hearsay inadmissible.  *See* M.R. Evid. 802 ("Hearsay is not admissible unless any of the following provides otherwise: . . . [a] statute.").  By statute, "The court may admit and consider oral or written evidence of out-of-court statements made by a child, and may rely on that evidence to the extent of its probative value."  22 M.R.S. § 4007(2) (2018).  *See In re Paige L.*, 2017 ME 97, ¶ 30, 162 A.3d 217 ("Title 22 allows a court to admit child hearsay evidence in a jeopardy hearing . . . ."); *In re Kayla S.*, 2001 ME 79, ¶¶ 7-8, 772 A.2d 858 ("Section 4007 . . . abrogates the hearsay rule as it applies to out-of-court statements made by children . . . [and] provides for the admissibility of a child's statement made outside of the court without the necessity of forcing the child to testify in the stressful environment of a contested hearing.").

[¶6]  Contrary to the parents' assertions, although we recognize their "fundamental liberty interest to direct the care, custody, and control of their children," *Banks v. Leary*, 2019 ME 89, ¶ 13, 209 A.3d 109 (quotation marks omitted), "[w]e have held that the introduction of evidence pursuant to 22 M.R.S. § 4007(2) . . . does not violate due process," *In re M.B.*, 2013 ME 46, ¶ 32, 65 A.3d 1260; *see In re Robin T.*, 651 A.2d 337, 338 (Me. 1994).

[¶7]  Accordingly, whether to admit a child's out-of-court statement lies within the trial court's discretion.  *See In re Kayla S.*, 2001 ME 79, ¶ 7, 772 A.2d 858; *In re Morris D.*, 2000 ME 122, ¶ 6, 754 A.2d 993.  We discern no abuse of that discretion on this record, where the parents had a full opportunity at the hearing to examine other witnesses concerning the children's statements and corroborating evidence, in addition to testifying themselves concerning the events at issue—testimony that the court found was not credible.

C.    Sufficiency

[¶8]  We next consider the parents' contention that the evidence was insufficient to support the court's findings by clear and convincing evidence that "[t]he children[] are in circumstances of jeopardy with respect to each parent," and that "returning the children home is likely to result in serious emotional or physical damage."  *See supra* section (A).  We review the court's factual findings for clear error.  *In re Children of Travis G.*, 2019 ME 20, ¶ 5, 201 A.3d 1224.  "[A] court's finding is clearly erroneous when there is no competent evidence in the record to support it."  *McMahon v. McMahon*, 2019 ME 11, ¶ 8, 200 A.3d 789 (quotation marks omitted).  "Additionally, when reviewing on appeal findings of fact that must be proved by clear and convincing evidence, we determine whether the factfinder could reasonably

have been persuaded that the required factual finding was or was not proved to be highly probable." *State v. Cookson*, 2019 ME 30, ¶ 8, 204 A.3d 125 (quotation marks omitted).

[¶9] The trial court's factual findings, which are supported by the record, included the following:

> [T]he children were exposed to increased threats of physical harm and emotional maltreatment beginning in late February 2018.
>
> Based on the evidence presented, the court finds that on or about the evening of February 28, 2018, [the father] and [the mother] were home with all four (4) children and got into an argument. [The father] called his mother . . . and asked her to come get him. When [she] arrived, [the father] did not want her to enter the home. [She] observed a broken window in the front door and noticed two (2) of the children crying. [She] eventually left without her son. Later that same evening, [the mother]'s mother . . . came to the house and took [the mother] and [the] children to her residence. The next day, two (2) of the children reported this incident to school officials. [The second-oldest child] told her teacher . . . that she was not going home today because mom and dad got into a fight and dad broke the windows in the home. [The oldest child] told her teacher . . . that the previous evening her parents got into a fight and her father broke windows with a broom. [She] also said that at one point her mother was on the floor and her father was on top choking her. [She] was very scared and crying when she spoke to [her teacher] and thought her father might kill her mother. [She] also said all of her siblings were present during the incident. Later that week, [the Band's ICWA director] met with [the mother] . . . to talk about available services. During the meeting, [she] observed [the mother] to be crying, red faced and overwhelmed. [The mother] advised [the ICWA director] she would contact . . . the Band's domestic violence program for assistance. [The mother] also stated she would apply for a

protection order from the court. [The mother] failed to follow through on any of these plans and soon thereafter reunited with [the father]. Both parents deny the February 28th incident involved domestic violence. . . . Based on the evidence presented and the parents' presentation while testifying, the court does not find their versions credible.

The court further finds that on or about May 8, 2018, [the oldest child] went to school with a bruise on her cheek. [She] advised her teacher . . . that the previous day she had accidently hit [her sister] in the cheek while they were playing near a stake for their pool. [She] went on to say that her mother accused her of hitting [her sister] on purpose and that her mother punched her on the cheek with a closed fist on behalf of [her sister]. [She] said her mother told her that if she told anyone, she would be in trouble. [She] was later interviewed by the Department's caseworker . . . . This interview was recorded and in the presence of law enforcement. [Her] statement to [the caseworker] was consistent with her statement to [her teacher]. Based on this evidence, the court finds [the oldest child]'s report of this incident credible. [The mother] denied hitting the child and said [the oldest child] told her the injury occurred when she hit her head on a pool stake. . . . [The mother] was subsequently arrested and bailed on conditions she have no contact with all four of the children. This bail remained in effect until August 31, 2018[,] when the criminal matter was resolved.

The court further finds that prior to August 22, 2018, [the mother] had contact with [the third-oldest child] in violation of her bail conditions. . . . On August 22, 2018, [the child] was interviewed by [the] Department's caseworker . . . and [the ICWA director]. During this interview, [the child] stated his parents were arguing and his mother grabbed his father's shirt. [The child] went on to state that his father pushed him out of the way as mom tried to run over his father with a 4-wheeler . . . . [The father] denied the incident when asked by [the caseworker]. [The mother] also denied the incident. The court does not find the parents' version of the incident to be credible.

The court further finds that while the aforementioned bail conditions were in effect, [the mother] had contact with the children on numerous occasions with the assistance and consent of [the father]. [The father]'s sister[, who was] the resource caregiver for [two of the children,] testified credibly that she saw [the mother] with the children on numerous occasions while the bail conditions [were] in effect. [The father's sister] testified this occurred at both [the father]'s trailer and the residence of [the father's] uncle who lived a short distance from [the father's] mother. Furthermore, on August 22, 2018, [the ICWA director] and [the caseworker] went to [the father's mother]'s house to speak with the children about the 4-wheeler incident. When they arrived, three (3) of the children . . . were present. [The second-oldest child] advised [the caseworker] and [the ICWA director] that [the youngest child] was visiting with their mother at [the father's uncle's residence]. [The oldest child] immediately denied such contact was occurring and put her hand over [her sister]'s mouth. [The father] then went to [his uncle]'s home and returned with [the youngest child]. Both parents acknowledged the children had incidental contact . . . while in the community, but denied any direct contact . . . .

. . . .

[B]ased on the credible evidence presented in this matter, the court finds by clear and convincing evidence that returning the children to the custody of either parent most likely would cause them serious emotional or physical damage. The children have been exposed to acts of violence by both parents which places them at risk of serious injury. Furthermore, [the father] has deliberately disregarded court orders designed to prevent [the mother] from having contact with the children which on at least one (1) occasion placed [the third-oldest child] in direct significant risk of serious harm. Additionally, neither parent has worked in cooperation with the Department or the Band to alleviate this risk and refuse to acknowledge the potential of serious consequences of their actions and inactions. Based upon this record, the court finds the

Department and the Band would be unable to adequately supervise this family if custody of the children was returned to either parent[].

[¶10] Based on these supported findings, the court "could reasonably have been persuaded that . . . [it] was . . . highly probable," *Cookson*, 2019 ME 30, ¶ 8, 204 A.3d 125 (quotation marks omitted), that the children were subject to "[s]erious harm or [a] threat of serious harm," 22 M.R.S. § 4002(6)(A) (2018), and "serious emotional or physical damage," 25 U.S.C.S. § 1912(e), absent a child protection order. *See* 22 M.R.S. § 4035(2).

D.      Dispositional Order

[¶11]   Based on its jeopardy determination, the court entered a dispositional order pursuant to 22 M.R.S. § 4036 (2018) that, inter alia, granted custody of the children to the Department of Health and Human Services; continued the children's ICWA-compliant kinship placements; and required the parents to comply with substance abuse conditions. The parents' challenge to the section 4036 dispositional order is interlocutory and not cognizable here. 22 M.R.S. § 4006 (2018); *In re Kaliyah B.*, 2017 ME 134, ¶ 1 & n.2, 166 A.3d 117.

The entry is:

Judgment affirmed.

James M. Dunleavy, Esq., Currier & Trask, P.A., Presque Isle, for appellant mother

Michele D.L. Kenney, Esq., Bloomer Russell Beaupain, Houlton, for appellant father

Aaron M. Frey, Attorney General, and Hunter C. Umphrey, Asst. Atty. Gen., Office of the Attorney General, Augusta, for appellee Department of Health and Human Services

Houlton District Court docket number PC-2018-7
FOR CLERK REFERENCE ONLY