MAINE SUPREME JUDICIAL COURT                        Reporter of Decisions
Decision:      2019 ME 154
Docket:        Aro-19-162
Submitted
  On Briefs:   October 24, 2019
Decided:       October 31, 2019
Revised:       April 9, 2020

Panel:         SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

IN RE CHILDREN OF TROY H.

PER CURIAM

[¶1] Troy H. appeals from a judgment entered by the District Court (Presque Isle, *Nelson, J.*) finding that two of his children are in circumstances of jeopardy pursuant to 22 M.R.S. § 4035(2) (2018) and that returning those children to his custody is likely to cause them serious emotional or physical damage pursuant to the Indian Child Welfare Act (ICWA), 25 U.S.C.S. §§ 1901-1963 (LEXIS through Pub. L. No. 116-65). He contends that the court's factual findings do not support its determination that the children are in jeopardy. We affirm the judgment.

## I. BACKGROUND

[¶2] In November of 2018, the Department of Health and Human Services filed a petition for a child protection order and preliminary protection

order for the two children, who were then fourteen and sixteen years old.[1]  The petition alleged that the children were at risk due to the emotional instability and homelessness of their father—who had sole custody at that time pursuant to a Florida child protection order—which caused him to neglect the children's health and safety.  The court entered a preliminary protection order that day, placing the children in the Department's custody.  The father waived the opportunity for a summary preliminary hearing, and he consented to their foster placement pursuant to ICWA.  *See* 25 U.S.C.S. § 1915(a), (c); 22 M.R.S. § 4034(4) (2018).

[¶3]  The court conducted a contested jeopardy hearing in January and March of 2019.  Based on the evidence presented at the hearing, by order dated April 11, 2019, the court determined by clear and convincing evidence that the children were in jeopardy to their health or welfare due to physical and emotional abuse and that returning the children to the father's custody would likely result in serious emotional or physical damage to the children.[2]  *See*

---

[1]  The children, through their mother, are affiliated with the Aroostook Band of Micmac Indians and ICWA therefore applies, 25 U.S.C.S. §§ 1901-1963 (LEXIS through Pub. L. No. 116-65); the Band has been involved since before the Department filed its initial petition in this case.

[2]  The court also entered an agreed-to jeopardy order as to the mother, and she does not appeal from that order.

25 U.S.C.S. § 1912(e); 22 M.R.S. §§ 4002(6), 4035(2) (2018). The father timely appealed. *See* 22 M.R.S. § 4006 (2018); M.R. App. P. 2B(c)(1).

## II.  DISCUSSION

[¶4]  We note initially that Maine law and federal law apply concurrently to this proceeding, resulting in a "dual burden of proof." *In re Denice F.*, 658 A.2d 1070, 1072 (Me. 1995). Pursuant to ICWA, the Department was required to prove by clear and convincing evidence "that the continued custody of the child[ren] by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child[ren]." 25 U.S.C.S. § 1912(e). Maine law, however, requires that the Department prove by a preponderance of the evidence that the children are in circumstances of jeopardy, which includes the "threat of serious harm." 22 M.R.S. §§ 4002(6)(A), 4035(2); *In re Danielle H.*, 2019 ME 134, ¶ 2, 215 A.3d 217.

[¶5]  The father does not purport to dispute any of the court's underlying factual findings, but instead asserts that those facts do not support the court's conclusion that the children are in circumstances of jeopardy pursuant to the Maine statute. 22 M.R.S. § 4035(2). We review the court's factual findings for clear error and will affirm its jeopardy determination pursuant to section 4035(2) "unless there is no competent record evidence that can rationally be

understood to establish as more likely than not that the child was in circumstances of jeopardy to his or her health and welfare." *In re Nicholas S.*, 2016 ME 82, ¶ 9, 140 A.3d 1226 (alterations omitted) (quotation marks omitted); *see also In re Chesley B.*, 499 A.2d 137, 139 (Me. 1985).

[¶6] The court made the following findings of fact, all of which are supported by competent evidence in the record.

> [Soon after moving to Maine in the summer of 2017, the father] would respond or react to [the older child] in a physical manner. . . . On or about January 21, 2018, after a physical altercation with [the father, the older child] was taken to the hospital and then placed in [a crisis unit]. . . . The incident started with arguing, then [the older child] kicked or put his foot on his father's chair. [The father] pulled [the older child] by his hair down the hallway and put him in his room. . . . Upon leaving the crisis unit, [the older child] was supposed to have follow up services. [The father] did not like the lady who came to the house for this . . . . [The older child] did not receive any other services.

> At the end of June 2018, . . . [the older child] reported his father threw him into a wall in his bedroom. . . . [The police] brought [the child] to the hospital, thereafter [the child] was placed back in [the crisis unit]. No follow up services were set up for [the child].

> On July 9, 2018, [the older child and the father] were in a physical altercation wherein [the father] responded by taking [the child] to the ground and putting him in a chokehold. . . .

> During the same time period that [the father] was having significant difficulties with the boys, [the father] was abusing substances, including methamphetamine. . . . [The older child]

developed a belief that [the father] was engaged in significant methamphetamine use.

[The children] lived with their mother for a few months beginning in the fall of 2018, while [the father] lived in a car for a period of time and then in a house/cabin . . . . The house/cabin was not suitable for the children to live in. . . . [The children] were not attending school consistently at that time.

. . . They had no stable housing, were bouncing around from place to place, and [the older child's] relationship with [the father] had completely deteriorated. [The older child] did not want to go back with his father. He described his father as a "psychopath" and that [the father] was "always hitting me and yelling at me."

[The father] had no place to take the boys and no money. The children's world was in utter chaos. [The father] had no viable plan moving forward. His swift and severe reactions to [the older child] were causing [the younger child] to withdraw and [the older child] to rebel. [The father] was responding to [the older child] by yelling and swearing or being physical with [the older child]. [The father] had a complete and total lack of understanding as to how this instability and the volatile relationship with [the older child] was affecting [the younger child]. . . .

Since coming into care, [the older child's] situation has improved. . . . He is having daily telephone contact with [his mother] but indicated he wants no contact with [the father]. This is due in large part to [the father] blaming [the older child] for the situation now confronting the family . . . .

[The younger child] needs structure, supervision, and a parent that works with entities such as the school system and providers.

[The father] . . . has difficulty maintaining his composure and communicating effectively. He is very rigid in his way of thinking. . . . He perseverates on blaming others for his actions and

reactions, and cannot or will not see how his role contributes to escalating situations, especially with [the older child].

[¶7]  Contrary to the father's contention, we conclude that these findings establish as more likely than not that returning the children to the father's custody would cause the children "[s]erious harm or [the] threat of serious harm."[3]  22 M.R.S. § 4002(6)(A).

[¶8]  The entry is:

Judgment affirmed.

---

Allan Hanson, Esq., Caribou, for appellant Father

Aaron M. Frey, Attorney General, and Zack Paakkonen, Asst. Atty. Gen., Office of the Attorney General, Augusta, for appellee Department of Health and Human Services

Presque Isle District Court docket number PC-2018-27
FOR CLERK REFERENCE ONLY

---

[3]  The father does not appear to challenge the court's determination, by clear and convincing evidence, that returning the children to his custody "is likely to result in serious emotional or physical damage to the child[ren]."  25 U.S.C.S. § 1912(e).  To the extent that he does, however, we also conclude that the court's findings are supported by competent record evidence and are a sufficient basis for its conclusion that returning the children to the father's custody would likely result in their "serious emotional or physical damage."  *Id.*; *see State v. Cookson*, 2019 ME 30, ¶ 8, 204 A.3d 125.