MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2025 ME 7
Docket:        Aro-24-133
Submitted
  On Briefs:   September 25, 2024
Decided:       January 30, 2025

Panel:         STANFILL, C.J., and MEAD, HORTON, and LAWRENCE, JJ.


IN RE CHILD OF TAYLOR M.


LAWRENCE, J.

[¶1]  Taylor M. appeals from a judgment of the District Court (Houlton, *Langner, J.*) terminating her parental rights to her child.  She argues that the court violated her due process rights during the proceedings and erred in various ways, including by not complying with certain requirements outlined in the Indian Child Welfare Act (ICWA).  Because we conclude that the State of Maine complied with ICWA requirements and that the court did not commit prejudicial error, we affirm the court's judgment.

## I.  BACKGROUND

[¶2]  The child is an Indian child within the meaning of ICWA, *see* 25 U.S.C.A. § 1903(4) (Westlaw through Pub. L. No. 118-158), because the mother is a registered member of the Mi'kmaq Nation.  The child was born premature on July 26, 2022, with various medical conditions that caused the child to stay in the hospital for approximately two months following the child's birth.  Since

birth, the child has required extraordinary care and attention because of these multiple conditions.

[¶3] During the first two months of the child's life when the child remained in the hospital, the mother was almost completely absent and therefore did not learn about the specific care that the child would require. Given the mother's absence during this critical time, on September 17, 2022, the Department of Health and Human Services filed a petition for a child protection order and a request for an order of preliminary protection. The District Court (Houlton, *Langner, J.*) granted the order of preliminary child protection and granted custody of the child to the Department that same day. The child was placed with resource parents, who remain as the child's resource parents today. The Department filed a preliminary reunification and rehabilitation plan as to the mother on October 3, 2022.

[¶4] The court gave the mother an opportunity for a summary preliminary hearing, but the mother did not appear, so no hearing was held. The preliminary protection order remained in effect.

[¶5] In January 2023, the court held a jeopardy hearing. The parties agreed as to the findings and the disposition, and the court issued a jeopardy order on January 11, 2023. The court found, by clear and convincing evidence,

*see* 25 U.S.C.A. § 1912(e) (Westlaw through Pub. L. No. 118-158), that there was jeopardy based on the mother's threat of neglect, threat of emotional maltreatment, and threat of physical harm due to her inability to provide care for the medically at-risk child.  The court also found that returning the child to the custody of the mother would most likely result in serious emotional or physical damage to the child.  *See id.*

[¶6]  The court scheduled a judicial review and permanency planning hearing for May 2023.  The hearing was continued until July 2023 at the Department's request.  The permanency planning hearing scheduled for July was not held, and the trial court scheduled a permanency planning hearing and judicial review for September 2023.  The Mi'kmaq Nation filed a motion to continue the hearing, and the trial court granted the motion, scheduling the hearing for January 2024.  Around this time, in fall 2023, the child's resource parents moved outside of Maine and brought the child with them, with the agreement of the Department and the tribe.

[¶7]  In October 2023, the Department filed a petition to terminate the mother's parental rights.  A case management hearing was scheduled for November 2023, but the Department filed a motion to continue the hearing,

4

which the court granted.  The case management hearing took place in December 2023.

[¶8]  The permanency planning hearing and judicial review scheduled for January 2024 were consolidated with the hearing on the Department's petition for termination of parental rights.  At this consolidated hearing, the court heard testimony from the Department's permanency caseworker; one of the child's resource parents; the ICWA director for the Mi'kmaq Nation, who is a qualified expert witness under 25 U.S.C.A. § 1912(f) and 22 M.R.S. § 3954 (2024);[1] and

---

[1] Certain proceedings under both ICWA and the Maine Indian Child Welfare Act (MICWA) require the testimony of a qualified expert witness.  *See* 25 U.S.C.A. § 1912(e), (f) (Westlaw through Pub. L. No. 118-158).  Under 22 M.R.S. § 3954(2) (2024), in any proceeding that requires the testimony of a qualified expert witness, that witness must testify as to (a) "[t]he prevailing social and cultural standards and child-rearing practices of the Indian child's tribe"; and (b) "[w]hether the Indian child's continued custody by the Indian child's parent or Indian custodian is likely to result in serious emotional or physical damage to the Indian child."

A person is a qualified expert witness under section 3954 if either (a) "the Indian child's tribe has designated the person as being qualified to testify to the prevailing social and cultural standards of the Indian tribe," *id.* § 3954(3), or (b) the person is (in descending order of priority)

(i)  "[a] member of the Indian child's tribe who is recognized by the tribal community as knowledgeable in tribal customs as they pertain to family organization and child-rearing practices," *id.* § 3954(4)(A);

(ii)  "[a] member of another Indian tribe who is recognized to be a qualified expert witness by the Indian child's tribe based on the member's knowledge of the delivery of child and family services to Indians and the Indian child's tribe," *id.* § 3954(4)(B);

(iii)  "[a] layperson who is recognized by the Indian child's tribe as having substantial experience in the delivery of child and family services to Indians, and knowledge of prevailing social and cultural standards and child-rearing practices within the Indian child's tribe," *id.* § 3954(4)(C); or

(iv)  "[a] professional person having substantial education and experience in the area of the professional person's specialty who can demonstrate knowledge of the prevailing social and cultural standards and child-rearing practices within the Indian child's tribe." *Id.* § 3954(4)(D).

the guardian ad litem. During the hearing, the mother requested that the petition to terminate parental rights be denied and that the child's resource parents instead be appointed as permanency guardians for the child. The mother sought a permanency guardianship because she believed that the Department had wrongly deviated from the adoptive placement preferences prescribed by ICWA.

[¶9] The trial court found that the mother had refused to participate in the extensive reunification efforts that were offered to her by the Department and the Mi'kmaq Nation. She attended only nine percent of the visits offered to her while the child was in the Department's custody and she had visited the child only twice in the preceding eight months. When the child's resource family moved outside of Maine, the mother did not participate in the remote video visits offered to her. The court ultimately found that the Department had made active remedial efforts to reunify the family, *see* 25 U.S.C.A. § 1912(d), and the mother had not taken significant steps to ameliorate the jeopardy that she poses to her child, especially given the child's specialized medical needs. The court further found beyond a reasonable doubt that continued custody of the

---

As the designated ICWA director for the Mi'kmaq Nation, the qualified expert witness here satisfied MICWA's requirements. And, although ICWA does not define "qualified expert witness," there is no suggestion on this record that the ICWA director for the Mi'kmaq Nation is not qualified.

6

child by the mother is likely to result in serious emotional or physical damage to the child. *See* 25 U.S.C.A. § 1912(f).

[¶10] Moreover, the court found that the Department and the Mi'kmaq Nation searched but could not find any appropriate family or other tribal members with whom the child could be placed. The mother did not suggest any appropriate alternative placements for the child. The ICWA director of the Mi'kmaq Nation and the child's guardian ad litem agreed that the child should stay with the resource parents. Given the child's heightened medical needs, the inability to locate other appropriate placement options, the length of time the child had been in the resource parents' care, and the bond that had developed between the child and the resource parents, the court found good cause to keep the child with the resource parents despite the fact that they had moved outside of Maine.

[¶11] The trial court terminated the mother's parental rights in an order entered on February 27, 2024. The mother timely appealed. *See* M.R. App. P. 2B(c)(1).

## II. DISCUSSION

### A. Compliance with ICWA and MICWA

[¶12] The mother contends that the court did not comply with certain requirements of ICWA before terminating her parental rights to the child. First, the mother claims that the court erred by finding beyond a reasonable doubt that the continued custody of the child by the mother would result in serious emotional or physical damage to the child. Second, she asserts that the child's placement with the resource parents violates ICWA's placement preferences. Third, she argues that the court erred when it found that the Department had made the active reunification efforts required by ICWA. We conclude that the court complied with all requirements laid out in ICWA and MICWA and thus did not err.

[¶13] "We review the court's factual findings for clear error. [A] court's finding is clearly erroneous when there is no competent evidence in the record to support it." *In re Children of Danielle H.*, 2019 ME 134, ¶ 8, 215 A.3d 217 (citation and quotation marks omitted).

[¶14] Under ICWA, in an involuntary proceeding in state court involving an Indian child,

> [n]o termination of parental rights may be ordered . . . in the absence of a determination, supported by evidence beyond a

> reasonable doubt, including testimony of qualified expert witnesses, that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child.

25 U.S.C.A. § 1912(f).  In 2023, the Legislature enacted the Maine Indian Child Welfare Act (MICWA), which provides, in relevant part,

> Involuntary termination of parental rights may not be ordered in the absence of a determination, supported by evidence beyond a reasonable doubt, including testimony of qualified expert witnesses, that the continued custody of the Indian child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the Indian child.  The evidence must show a causal relationship between the particular conditions in the home and the likelihood that continued custody of the Indian child will result in serious emotional or physical damage to the particular Indian child who is the subject of the Indian child custody proceeding.

22 M.R.S. § 3945(7) (2024).  State standards of unfitness pursuant to 22 M.R.S. § 4055 (2024) must also be independently established by clear and convincing evidence.  Thus, there is a dual burden of proof, one federal and one state, in a hearing on a petition for termination of parental rights as to an Indian child.[2]

*In re Children of Troy H.*, 2019 ME 154, ¶ 4, 218 A.3d 750.

---

[2]  The mother does not contest the trial court's parental unfitness findings under 22 M.R.S. § 4055(1)(B)(2)(a), (b)(i)-(ii), (iv) (2024).

### 1.    Custody by the mother

[¶15]   The mother contends that the Department did not establish beyond a reasonable doubt that the mother's custody of the child would result in serious emotional or physical damage to the child because (1) the child's move out of state prevented the mother from demonstrating her ability to care for the child and (2) there was no evidence presented regarding the suitability of the mother's home.  We conclude that the trial court did not err.

[¶16]   As required by both ICWA and MICWA, the qualified expert witness testified in support of termination of the mother's parental rights because of the mother's inability to address the child's severe medical issues. *See* 25 U.S.C.A. § 1912(f); 22 M.R.S. § 3945(7).  Ample evidence supports the qualified expert witness's testimony and the court's findings.  The guardian ad litem testified that it was in the child's best interest that the mother's parental rights be terminated because of the child's "extraordinary medical conditions" and the mother's "almost total lack of connection" to the child.  The Department's caseworker testified that she feared that the child would die if the child were returned to the mother's care because the mother does not know how to care for the child given the child's serious health conditions.  A pediatric cardiologist who treated the child explained that the child's conditions are so

severe that he has only seen the child as an outpatient—rather than an inpatient—on two occasions, and the child continues to be very medically fragile.

[¶17]  This evidence is completely unrelated to the resource parents' move out of state or the appropriateness of the mother's home.  It is clear that the mother barely engaged with the child for the sixteen months between the child's birth and the time of the move.  In addition, the mother's consistent neglect of the child's needs demonstrates a causal relationship between the child's living in the mother's home and the likelihood of serious emotional or physical damage, despite the fact that there was no evidence presented regarding the mother's home.  Thus, the Department met its burden under both ICWA and MICWA.

[¶18]  For these reasons, we conclude that the trial court did not clearly err in finding that the ICWA and MICWA standards regarding the likelihood of serious emotional or physical damage were met.

### 2.    Placement of the child

[¶19]  The mother next argues that the preadoptive placement of the child violates the placement preferences outlined in ICWA and MICWA.  "We review questions of law, including issues of statutory and constitutional

interpretation[,] de novo." *In re M.B.*, 2013 ME 46, ¶ 26, 65 A.3d 1260 (quotation marks omitted).

[¶20]  When an Indian child's circumstances make foster care or preadoptive placement necessary, the state must give preference to certain placement options in the order of preference set out by statute.  MICWA, like ICWA, requires the state to give preference to the following placement options, in descending order of preference, absent a showing of good cause to the contrary:

>   A.  An extended family member of the Indian child;
>
>   B.  A foster home licensed, approved or specified by the Indian child's tribe;
>
>   C.  An Indian foster home licensed or approved by an authorized non-Indian licensing authority; or
>
>   D.  An institution for children approved by an Indian tribe or operated by an Indian organization that has a program suitable to meet the Indian child's needs.

22 M.R.S. § 3948(2)(A)-(D) (2024);  *see* 25 U.S.C.A. § 1915(b)(i)-(iv) (Westlaw through Pub. L. No. 118-158) (providing the same list of preferred placements). The mother argues that the proposed preadoptive placement in this case, the child's resource parents, falls into none of these categories and that no effort was made to locate an alternative placement so that the child could stay close

to the child's parents and the Mi'kmaq Nation when the resource parents planned to move out of state. *See* 22 M.R.S. § 3948(2) ("The Indian child must also be placed within reasonable proximity to that Indian child's home, taking into account any special needs of the child."). Therefore, the mother contends, the court should have ordered a permanency guardianship rather than termination of her parental rights.

[¶21] Although the Department was not able to find a family member or another member of the Mi'kmaq Nation who was appropriate to serve as the child's resource parent, the qualified expert witness and the Department caseworker had worked together to find an appropriate placement for the child. In her testimony, the qualified expert witness highlighted the daunting challenges that the Mi'kmaq Nation faces due to a high demand for resource parents and a dearth of individuals who are willing and able to fill these roles. The qualified expert witness also testified that she approved of the current placement with the resource parents and that the resource parents are actively engaged in nurturing the child's connection to the Mi'kmaq Nation and its culture. Moreover, the qualified expert witness specifically noted that the mother did not suggest any family members or other members of the Mi'kmaq Nation who could appropriately care for the child. Therefore, the placement is

"approved or specified by the Indian child's tribe" and thus does not violate the placement preferences outlined in ICWA and MICWA. *See* 25 U.S.C.A. § 1915(b)(ii); 22 M.R.S. § 3948(2)(B).

[¶22]  In addition, the court considered a permanency guardianship, but given the "special medical" needs of the child, determined that adoption provided certainty and stability that was in the child's best interest.  Given the child's serious medical needs, the appropriate care provided by the child's resource parents, the lack of another available placement, and the approval of the resource parents by both the Mi'kmaq Nation and the Department, we conclude that the court had sufficient cause to deviate from the mother's preference for a permanency guardianship and allow the child to remain in the resource parents' care despite their move out of state.[3]

### 3.    Reunification efforts

[¶23]  The mother further argues that the court erred when it found that the Department had made active efforts to reunify the mother with her child, *see* 25 U.S.C.A. § 1912(d), because the Department failed to file a reunification

---

[3]  ICWA and MICWA reflect the statutory intention that it is of the utmost importance to protect the rights of Maine's Indian families.  *See* 25 U.S.C.A. § 1901 (Westlaw through Pub. L. No. 118-158); 22 M.R.S. § 3942(2) (2024).  Contrary to the mother's contention, it is clear that the court took great care to follow the requirements laid out in ICWA and MICWA.  In light of the challenges presented by the child's circumstances, the court's recognition of and fidelity to the imperatives of these statutes was both appropriate and commendable.

plan in compliance with 22 M.R.S. § 4041(1-A)(A)(1) (2024). "Like the determination of the other elements under [22 M.R.S. § 4055(1)], we will affirm the court's findings" of active efforts to prevent the breakup of an Indian family "if supported by clear and convincing evidence in the record." *In re Child of Radience K.*, 2019 ME 73, ¶ 25, 208 A.3d 380 (quotation marks omitted).

[¶24] We conclude that the trial court did not err in finding by clear and convincing evidence that the Department had made active efforts to reunify and to prevent the breaking up of the Indian family. The Department coordinated visitation for the mother and offered to fly the mother out of state to visit the child if the mother first consistently engaged in remote video visitation. The Department also made referrals to case management services and attempted to set up family team meetings. Further, the Department filed a preliminary reunification and rehabilitation plan specifying a plan for the mother. Therefore, we conclude that clear and convincing evidence on the record supports the trial court's findings that the Department made active efforts to reunify and to prevent breaking up this Mi'kmaq family, and thus the court did not err.

**B.     Due Process**

[¶25]  The mother argues that she was denied due process because of the court's failure to hold a judicial review in the time required by statute.  This argument was raised for the first time on appeal, and therefore we review it for obvious error.  *In re Children of Destiny H.*, 2024 ME 66, ¶ 18, 322 A.3d 1183.  "Obvious error is error that is seriously prejudicial error tending to produce a manifest injustice."  *Id.* (quotation marks omitted).

[¶26]   Once a jeopardy order has been issued, absent certain circumstances not present in this case, Maine law requires the court to hold a judicial review at least once every six months until the child is either emancipated or adopted.  22 M.R.S. § 4038(1) (2024); *Adoption of Michaela C.*, 2004 ME 153, ¶ 6, 863 A.2d 270.  The court held a jeopardy hearing in January 2023 and did not hold a judicial review and permanency planning hearing until January 2024, when it consolidated those proceedings with the hearing on the petition to terminate the mother's parental rights.  Given that the court failed to meet its statutory mandate to hold a judicial review every six months after issuing a jeopardy order, we conclude that the trial court erred.  Such error, however, was not prejudicial and thus does not constitute obvious error.

16

[¶27]  The error was not prejudicial because it is unlikely that a timely judicial review would have changed the outcome of this case.  As discussed, *see supra* ¶ 17, the mother's engagement in reunification efforts had been negligible since the time the child entered the Department's custody.  The principal reason that the mother sought a contested judicial review was to "get [] guidance from the court on reunification," but termination of parental rights in this case was not based on the mother's lack of compliance with reunification efforts not communicated to her.  *See In re Child of Rebecca J.*, 2019 ME 119, ¶ 7, 213 A.3d 108 ("Only when the Department failed to develop a formal reunification plan, and the parent's rights were nevertheless terminated for failure to comply with specific reunification obligations never communicated to that parent, have we vacated a judgment terminating parental rights." (quotation marks omitted)).  Therefore, the court's error did not prejudice the mother.

[¶28]  We note and reiterate that it is important for courts to hold judicial reviews every six months as required by statute.  But we conclude that the failure to do so here would not have affected the outcome in this case.  Therefore, the error was not prejudicial to the mother, and we affirm the court's judgment.

The entry is:

Judgment affirmed.

---

Brittany Sawyer, Esq., Holmes Legal Group, LLC, Wells, for appellant mother

Aaron M. Frey, Attorney General, and Hunter C. Umphrey, Asst. Atty. Gen., Office of the Attorney General, Bangor, for appellee Department of Health and Human Services

Houlton District Court docket number PC-2022-16
FOR CLERK REFERENCE ONLY